517 So.2d 1225 (1987)
Joseph ISTRE
v.
ABC INSURANCE COMPANY, et al.
No. CA-7552.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1987.
*1226 Frank J. D'Amico, Sophia Pappas Barnett, New Orleans, for plaintiffJoseph Istre.
James M. Colomb, III, Simon and Rees, New Orleans, for defendantJames Boudreaux and U.S. Fidelity and Guar. Co.
Eugene J. Gomes, Jr., New Orleans, for intervenorAmerican Guarantee and Liability Ins. Co.
Before BARRY, LOBRANO and WARD, JJ.
BARRY, Judge.
Joseph Istre was employed by Lambert Electric Co. P.D. Lambert (Mr. Lambert) owned Lambert Electric which provided labor for the operation of his ranch. On *1227 April 10, 1983 Istre was a passenger in a 1953 jeep driven by James Boudreaux. They were herding cattle on the ranch when the jeep passed over a culvert and Istre's right ankle was allegedly smashed against a fence post.
Istre filed a personal injury suit against Boudreaux, ABC Insurance (Boudreaux's unknown insurer), United States Fidelity and Guaranty Co. (the jeep's insurer) and Lambert Electric (Istre's employer). Lambert Electric's worker's compensation carrier, American Guarantee and Liability Insurance Company, intervened for all sums paid to or on behalf of Istre. The trial court rendered judgment against Boudreaux and USF & G, in solido, for $123,372.65, and in favor of intervenors and against Istre for $6,377.65. Unfortunately, no reasons for judgment were given.
Defendants appeal urging (1) Boudreaux was immune from tort liability as a statutory co-employee of Istre, (2) Boudreaux was not negligent, (3) Istre was contributorily negligent, (4) it is speculative to relate Istre's surgery, some two years later, to the accident, and (5) the award should be reduced.
As to whether Boudreaux is a statutory co-employee, a person rendering service for another in any trade, business or occupation is presumed to be an employee for the purpose of worker's compensation. La.R.S. 23:1044. The issue is whether plaintiff rebutted that presumption.
Boudreaux repeatedly testified that he had no regular duties to perform at the ranch and, specifically, he was never employed by Lambert Electric or Mr. Lambert and never received a paycheck from either. His testimony was corroborated by his wife, Anne Boudreaux, and in deposition by the president of Lambert Electric. Mrs. Boudreaux and her husband lived at the ranch where she was the caretaker and received free housing and utilities plus wages. There was testimony as to various chores Boudreaux performed when requested; however, Boudreaux explained that he did the work to assist his wife and because he felt an obligation to Mr. Lambert because he lived on the ranch rent free. Boudreaux is a 63 year old retired mechanic on social security due to a back disability sustained in a work-related accident. It was stipulated that there were no records showing employment of Boudreaux by Lambert Electric. Boudreaux never listed any income from Lambert Electric on tax returns or notified social security of any income.
These facts are similar to Arnold v. McConnell, 424 So.2d 402 (La.App. 2nd Cir.1982) where a father sued his son's stepfather for death benefits under the Worker's Compensation Act. The stepfather contended that the boy was not his employee. The boy lived with the stepfather who provided all of his support. The stepfather gave all children in the house, including his stepson, a $10 to $20 per week allowance. When not in school during the summer, the boy would assist his stepfather's business but never received remuneration other than his allowance. The stepfather never reported the allowance as a business expense nor was any deduction ever made for income or social security taxes. Importantly, we think, is the fact that the allowance was not contingent on the boy's labor. The Second Circuit upheld the finding that the son was not an employee. Likewise, in this case, Boudreaux's voluntary chores are consistent with a cooperative retiree desirous of supporting his wife's employment and of making himself useful. There is no evidence that the free rent is related to Boudreaux's work efforts.
Thus, we find Boudreaux rebutted the R.S. 23:1044 presumption and is not a statutory co-employee of Istre.
Defendants next urge that Boudreaux was not negligent. Boudreaux testified that on the day of the accident he requested Istre to help him herd a bull into a pen. They got into the jeep and Boudreaux drove with Istre in the passenger seat. Boudreaux started backing up, noticed Istre's leg outside the jeep, and told him to put his leg inside the jeep (Mr. and Mrs. Boudreaux claim to have said this to Istre previously). Boudreaux did not know if Istre put his leg back in. They were riding *1228 on pasture land and Boudreaux said he was watching the road, driving straight, going "10 to 15, maybe 20 miles an hour" with the bull about 50 feet past the culvert where he had to turn. The culvert was divided by one post. As they crossed the culvert Istre hollered and Boudreaux stopped. Istre got out and apparently fell to the ground, got up and he and Boudreaux put the bull in the pen and returned to the house in the jeep. Boudreaux felt that Istre's leg must have been out of the jeep, but did not know whether it hit the post. Boudreaux maintained that for Istre's leg to strike the post the jeep would have had to run into the ditch.
Istre testified that his ankle was caught between the jeep and a piling to the right of the culvert. He sat with one leg in the jeep, holding on with the other on the side rail because there was no room on the floorboard because of "tools and stuff." Also, he said his seat was broken (corroborated by Boudreaux) and the jeep had no doors. Istre, 6 feet 4 inches, maintained he could not fit in the jeep and had to put his foot on the lip where the door would have been.
Istre said Boudreaux gunned the jeep to catch up to the animal and was not sure how fast the jeep was going. When Boudreaux swerved around the cattle pen, Istre slid out and his foot came off the ledge of the jeep. He said his foot was on the ledge when Boudreaux tried to turn right over the culvert, the jeep struck a post and his ankle was crushed. Istre was unclear as to whether the jeep struck the piling and said he would have fallen out if both feet had been inside the jeep.
Istre is a large young man who had trouble fitting into the old jeep. That and the fact the seat was broken was clearly within Boudreaux's knowledge. Under these circumstances, Boudreaux had a duty to drive in a manner allowing Istre a reasonable ability to remain in the vehicle. All of these facts contributed to a situation where even prudent driving and admonitions to keep his leg inside would have been useless. From the conflicting facts we conclude it was not manifest error to hold Boudreaux negligent.
Defendants also urge that Istre was contributorily negligent and the recovery should be reduced in proportion to his negligence. La.C.C. Art. 2323. Both Mr. and Mrs. Boudreaux testified they previously admonished Istre to keep his legs in the jeep. Mrs. Boudreaux and Istre testified that there were no doors on the jeep and the seat was broken. When questioned by the court, Istre maintained that had he refused to help round up the cattle he would have gotten in trouble or been fired. He was responsible for maintenance of the jeep and knew the seat was broken and needed welding; however, Istre was not a welder and had informed the Boudreauxs and Mr. Lambert that the seat needed to be repaired.
Istre testified he could have moved the tools from the floorboard, but that he still would have fallen out had both feet been inside. He stated it was approximately 50-60 yards from the place where his foot initially slipped and the point where he was injured, but he did not ask Boudreaux to slow down.
Istre could not refuse Boudreaux's request to help round up the cattle, a dangerous activity, especially in a vehicle without doors. Even if the vehicle was going 10 miles per hour, we note the entire incident would have taken only 10 to 12 seconds, minimal time for Istre to ask Boudreaux to stop or slow down. Importantly, Istre informed his superiors of the need to fix the seat which they failed to do. All of these unusual circumstances preclude our finding manifest error as to Istre's lack of contributory negligence.
Defendants urge that it is speculative to relate plaintiff's surgery, some two years later, to the accident. The test for determining the causal relationship between an accident and subsequent operations and disabilities is whether it is more probable than not that the subsequent operation and disability was caused by the trauma. Mart v. Hill, 505 So.2d 1120, 1128 (La.1987).
*1229 Istre was treated by Dr. Walter Brent, an orthopedic surgeon whose initial diagnosis was a severe ankle sprain with contusion of the lateral ligaments and infection of the skin. Dr. Brent treated Istre for about four months. He felt the ankle problems would eventually clear with minimal disability. Istre did not return for almost two years, but Dr. Brent did not feel that was unusual based on the type of injury and his belief that Istre did not like doctors. Dr. Brent did a CT scan and decided on exploratory surgery which revealed a markedly thickened peroneal tendon and a spur on the talus. Dr. Brent felt both conditions were post-traumatic reactions to the April 10, 1983 injury. He also found traumatic arthritis had developed in the ankle, though there was no sign in the other ankle. Dr. Brent said it was unusual for someone plaintiff's age to have arthritic problems and concluded that the ankle problem was caused by the accident. He based this conclusion on the x-rays which did not show obvious injury, the absence of a history of previous injury, Istre's youth, and the absence of arthritis elsewhere.
Dr. LaBorde, defendant's orthopedic surgeon, examined plaintiff once. In deposition he testified that his findings were consistent with mild traumatic arthritis and felt that Istre had a right ankle sprain probably superimposed on pre-existing traumatic arthritis. He felt it pre-existed because the "pointing" indicated by x-rays requires a longer time to develop. He noted that he could determine more precisely if and how much it was pre-existing by examination of x-rays taken at the time of or prior to the injury; however, he did not examine Dr. Brent's x-rays. He concluded that plaintiff had returned to his pre-injury status and it was more probable than not that the arthritis pre-existed the surgery.
Istre testified that he had no prior or intervening ankle accidents. Dr. LaBorde did acknowledge that there was no reported pre-existing trauma, but explained that such trauma could have resulted from multiple ankle sprains which might not have been considered very significant and may not have been remembered. Dr. Brent testified that there were no reported prior injuries to the ankle.
In summary, Dr. LaBorde saw Istre once and did not examine the earlier x-ray. Dr. Brent, on the other hand, treated Istre since the accident and monitored the status of the ankle for more than two years. We cannot conclude that plaintiff's surgery and present disabilities were unrelated to the April 10 accident.
Finally, defendants urge that the award was an abuse of discretion and should be reduced. Only after an articulated analysis of the facts has disclosed an abuse of discretion may an appellate court disturb an excessive award. Reck v. Stevens, 373 So.2d 498 (La.1979).
Plaintiff testified he went to De La Ronde Hospital the day of the accident, April 10, 1983. He could not walk, his ankle was swollen and he was in serious pain. He was given crutches and advised to see a specialist. Plaintiff stayed on the sofa with his leg elevated until April 12 when he saw Dr. Brent.
During that initial examination Dr. Brent noted marked swelling about the right ankle and foot area, redness over the top of the foot and tenderness of the ligaments of the ankle joint. The x-ray showed no bone injury. The doctor diagnosed a severe sprain with contusion of ligaments and infection, with a fever. He placed Istre in a pressure dressing with a plaster splint and prescribed antibiotic and anti-inflammatory drugs.
Istre returned twice in the following week. Tenderness was present, but by the second visit the swelling was down and a short cast with a walker was prescribed and he received anti-inflammatory drugs. By July 18 Istre had seen Dr. Brent seven more times. Swelling and pain were still present, he was continued on several different anti-inflammatory drugs, and support for his ankle was changed several times.
Istre returned to Dr. Brent on July 29, 1985 still complaining of pain and swelling which caused trouble while working. There was swelling, tenderness and fluctuation within the ankle joint. After doing a *1230 CT scan, Istre was admitted to the hospital on September 11, 1985 for exploratory surgery, which resulted in the removal of a thickened tendon and spur. His lateral ligament was tightened to relieve pain by stabilizing the ankle. After surgery he was put in a cast, then other ankle support devices. His activities were limited. Two months after surgery there was continued discomfort, swelling and nerve tenderness.
By January 6, 1986 Istre was back at work. During this time he had one severely painful exacerbation of symptoms which subsided, otherwise he was in minimal discomfort and still taking anti-inflammatory drugs. Dr. Brent told plaintiff not to run or jog or engage in anything involving a strain on his foot.
In March 1986 an ankle twist caused it to swell and become tender. Dr. Brent aspirated fluid from the joint and injected cortizone.
Dr. Brent felt that plaintiff had developed traumatic arthritis. At the time of the doctor's deposition Istre could not walk or climb for long periods, squat, or jog. The doctor could not say whether plaintiff would be able to jog in the future and felt the arthritis might increase. He concluded there was a residual 15-20% partial permanent disability of the lower extremity, that Istre would be more prone to ankle injuries and hampered in his physical activities for life. Dr. LaBorde also felt plaintiff had traumatic arthritis and did not take issue with the amount of permanent disability.
Istre testified that because of the accident he lost $8,800 in wages (post-injury and post-surgery) and his job opportunities and advancement had been hindered. He also testified as to the various activities he could not pursue. Medical expenses were stipulated as reflected in the award to intervenors.
We conclude the award was not above the discretionary limits afforded to the trial court and there is no abuse of discretion.
Intervenors, American Guarantee, also appeal urging the judgment be modified to grant it a preference along with interest and court costs. La.R.S. 23:1103 states that "such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent." Judgments routinely declare the insurer's recovery be paid by preference out of the sum awarded to plaintiff. See Willis v. Stauffer Chemical Company, 349 So.2d 1390 (La.App. 3rd Cir.1977) (on rehearing), writ denied 352 So.2d 1047 (La.1977). Further, the intervening compensation carrier is entitled to legal interest from the date of judicial demand or intervention. Lachney v. Motor Parts and Bearing Supply, Inc., 357 So.2d 1277 (La.App. 3rd Cir.1978); Willis v. Stauffer Chemical Company, supra. See also Malone & Johnson at § 70. The trial court's judgment should have reflected intervenor's preference as well as the right to legal interest from date of intervention.
As for costs La.R.S. 23:1317(B) provides "[c]osts may be awarded by the court, in its discretion." The judgment of the trial court provides:
IT IS ORDERED that there be judgment herein in favor of plaintiff, Joseph Istre, and against the defendants, James Boudreaux and U.S. Fidelity and Guarantee Co., in solido for the full and true sum of ONE HUNDRED TWENTY-THREE THOUSAND THREE HUNDRED SEVENTY-TWO AND 65/100 ($123,372.65) DOLLARS together with legal interest from the date of judicial demand until paid and for all costs of these proceedings.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the intervenor, American Guarantee and Liability Insurance Company and against the plaintiff in the full and true sum of SIX THOUSAND THREE HUNDRED SEVENTY-SEVEN AND 65/100 ($6,377.65) DOLLARS. (emphasis added)
There is no apparent abuse of discretion as to costs so the judgment as to costs cannot be modified.
That portion of the judgment relating to the intervention is amended to decree:
*1231 That there be judgment herein in favor of the intervenor, American Guarantee and Liability Company and against the plaintiff in the full and true sum of SIX THOUSAND THREE HUNDRED SEVENTY-SEVEN AND 65/100 ($6,377.65) DOLLARS, plus legal interest from the date of intervention, to be paid by preference out of sums awarded to the plaintiff.
In all other respects the judgment is affirmed.
AMENDED AND AFFIRMED.