661 So.2d 617 (1995)
Nancy D. BODDIE, Plaintiff-Appellee,
v.
STATE of Louisiana, Defendant-Appellant.
No. 27,313-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 1995.
*620 Weems, Wright, Schimpf, Hayter & Carmouche by Mark A. Perkins, Kenneth P. Haines, Shreveport, for Appellant.
James E. Franklin, Jr., Shreveport, for Appellee.
Before NORRIS, LINDSAY and WILLIAMS, JJ.
LINDSAY, Judge.
The defendant, the State of Louisiana, appeals from a trial court judgment granting the plaintiff, Nancy D. Boddie, $95,000 in general damages and $16,718.18 in medical expenses arising from a fall suffered by the plaintiff on the grounds of the State Office Building. Ms. Boddie broke her left arm in the fall. For the following reasons, we affirm.

FACTS
On June 11, 1991, the plaintiff was walking on a sidewalk on the grounds of the State Office Building located on Fairfield Avenue in Shreveport. The plaintiff's foot struck a metal drain cover on the sidewalk that was somewhat elevated above the level of the sidewalk, causing her to trip and fall.
The accident was witnessed by Paul Young, a local attorney who, at that time, had an office in the building. Mr. Young had tripped on the drain cover twice himself and had previously notified a security guard that the drain cover needed to be fixed.
Building personnel came to the plaintiff's aid and she was transported to the Schumpert Hospital emergency room, located across the street. Ms. Boddie, who has multiple sclerosis, was treated by her orthopedic physician, Dr. Craig Springmeyer. She had a badly broken left wrist and arm which required surgery and the application of an external fixator. The plaintiff was required to wear the fixator for several weeks.
The plaintiff filed suit against the State seeking damages, claiming that the drain cover posed an unreasonable risk of harm and that the State knew or should have known of the dangerous condition.
Trial was held on April 6-7, 1993. Ms. Boddie testified that on the date of the accident, she had gone to the State Office Building on business. While walking into the building, she tripped on the metal drain cover. She testified that after the fall, she was assisted by Mr. Young and Mike Pyles, a building maintenance employee. According *621 to the plaintiff, Mr. Pyles told her that she was the second or third person he had to take to the hospital following injury on the sidewalk drain cover.
Following her surgery on the date of the accident, the plaintiff testified that she had some bleeding from the arm and that it became infected. The plaintiff was readmitted to the hospital on June 12, 1991 and was discharged on June 20, 1991. She testified that the external fixator was left in place for 8-9 weeks. During the course of the healing process, the screws in the fixator were periodically tightened, causing the plaintiff a great deal of pain. Following removal of the fixator, the plaintiff had open wounds on her arm which healed in 2-3 weeks, but her left arm was scarred. The plaintiff testified that she underwent physical therapy, but stated that she had not regained total use of her arm.
Paul Young testified that he had tripped on the drain cover twice and that he informed a security guard that the cover needed to be fixed. He also testified that he saw the plaintiff trip on the drain cover and that when he went to assist her, it was apparent that her arm was broken.
Earl Owen, facility manager of the State Office Building at the time the plaintiff was injured, testified that he had numerous complaints of people slipping on the drain cover in wet weather, but denied reports of people tripping on the drain cover.
However, Rick Headrick, an insurance adjuster doing work on this case for the State Office of Risk Management, testified that Mr. Owen told him that several people had caught their feet on the drain cover but that the plaintiff was the only one who was seriously injured.
Merle Miller testified that at the time of the plaintiff's accident, he was employed by Capital Security as a security guard at the State Office Building. Mr. Miller testified that Earl Owen was his supervisor and that he filled out an accident report concerning the plaintiff's injury. He also stated that he did not remember Paul Young reporting to him that the drain cover needed to be fixed.
Mike Pyles, a maintenance worker at the state office building, testified that he took the plaintiff to the hospital after her accident, but denied telling her that anyone else tripped on the drain cover.
Robert Earl Jones, the plaintiff's engineering expert, examined the drain cover and determined that it did extend above the surface of the sidewalk on one side, a condition worsened by the addition of expanded metal to the top of the drain cover. Mr. Jones stated in his deposition that there was not a strong color contrast between the sidewalk and the drain cover, adding to the unsafe condition. Mr. Jones stated that the unsafe condition of the drain cover could not be easily observed. He also testified that the unsafe condition would cause pedestrians to catch their shoes on the drain cover.
On June 13, 1994, the trial court rendered judgment in favor of the plaintiff, awarding $95,000 in general damages and $16,718.18 in medical expenses. The trial court also awarded the plaintiff expert witness fees and costs of depositions for her engineering expert and ordered the defendant to pay for copies of the plaintiff's medical records.
In reasons for judgment, the trial court found that the plaintiff alleged and proved that, at the point where she tripped and fell, the drain cover was resting at an angle over the top of the concrete sidewalk, rather than inset into a groove in the sidewalk designed to allow the drain cover to be flush or even with the sidewalk. The court also found that the State had previously applied an expanded metal top to the drain cover, resulting in a hazard to those utilizing the walkway. The court found that the metal plate was positioned so as to extend above the surface of the sidewalk ¾ of an inch to 1 inch, causing an unreasonably dangerous condition. The court also found that the State knew or should have known of this condition.
The court found that the plaintiff is somewhat disabled as a result of the accident and has some numbness in her left hand. The court found that, while the numbness in the hand could be attributable to the plaintiff's multiple sclerosis, the preponderance of the evidence was that there was no numbness before the accident. The court found that *622 the fall caused permanent damage to the median nerve in the plaintiff's left wrist and hand and that the condition is not expected to improve. The court also noted that the plaintiff's arm is crooked and scarred.
The defendant appealed the trial court judgment, asserting numerous assignments of error.

UNREASONABLE RISK OF HARM
The defendant argues that the plaintiff failed to carry her burden of proving that the drain cover presented an unreasonable risk of harm. This argument is meritless.
In the present case, the plaintiff asserted that the State should be held liable for damage caused by the defect in its sidewalk under the theory of strict liability. The plaintiff also asserted that the State was negligent in failing to exercise reasonable care in designing, planning and maintaining its walkways.
Proof of liability on the part of a public entity, such as the State, is governed by LSA-C.C. Art 2317, as modified by LSA-R.S. 9:2800.
LSA-C.C. Art. 2317 provides in pertinent part:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of things which we have in our custody....
LSA-R.S. 9:2800(B) provides in pertinent part:
... [N]o person shall have a cause of action based solely upon the liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
Under the provisions of this statute, constructive notice means the existence of facts which infer actual knowledge. LSA-R.S. 9:2800(C).
Actual notice is knowledge of dangerous defects or conditions by a corporate officer or employee of the public entity having a duty either to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities. Fragala v. City of Rayville, 557 So.2d 1118 (La.App. 2d Cir.1990) writ denied 561 So.2d 103 (La.1990).
Traditionally, in order to prove a claim of strict liability on the part of a public entity, the plaintiff was required to plead and prove a defect in a publicly owned thing, that the defect caused an unreasonable risk of harm and that his injury was caused by the defect. Shipp v. City of Alexandria, 395 So.2d 727 (La.1981). The 1985 enactment of LSA-R.S. 9:2800 added the notice requirement to the list of factors that must be proved in order to recover against the state or a political subdivision under LSA-C.C. Art 2317.
A public entity is obligated to maintain its sidewalks in a reasonably safe condition. The defect or condition complained of must be one that poses an unreasonable risk of harm to a reasonably careful pedestrian. McDade v. Town of Oak Grove, 545 So.2d 1276 (La.App. 2d Cir.1989). In short, a public entity is not responsible for every defect or irregularity in a street or sidewalk that causes injury, but only for the dangerous defect that creates an unreasonable risk of injury. McDade v. Town of Oak Grove, supra. The plaintiff bears the burden of proving both the defect that makes the premises unreasonably dangerous and the resultant damages. Durkee v. City of Shreveport, 587 So.2d 722 (La.App. 2d Cir.1991), writ denied 590 So.2d 68 (La.1991).
The fact that a pedestrian fell does not elevate the condition of the street to that of an unreasonably dangerous defect. Shipp v. Alexandria, supra; Clark v. Hartford Accident and Indemnity Company, 562 So.2d 50 (La.App. 3d Cir.1990). To be a defect, the imperfection must pose an unreasonable risk of injury to persons exercising ordinary care and prudence.
*623 In deciding whether something presents an unreasonable risk of harm, the court must weigh the magnitude and probability of injury against the burden of preventing the injury. Entrevia v. Hood, 427 So.2d 1146 (La.1983); Faulkner v. State, Department of Transportation and Development, 25,857 (La.App. 2d Cir.1994), 645 So.2d 268, writs denied 94-2901, 94-2908 (La. 01/27/95), 649 So.2d 390; Durkee v. City of Shreveport, supra; Morell v. City of Breaux Bridge, 94-1378 (La.App. 3d Cir. 5/31/95), 660 So.2d 882.
In each case, the unreasonable character of the defect must be decided on the particular facts and circumstances of the case. Clark v. Hartford Accident and Indemnity Company, supra, and cases cited therein.
The evidence and testimony on the issue of whether the drain cover in this case poses an unreasonable risk of harm is conflicting. When there is a conflict in testimony, reasonable evaluations of credibility and reasonable inferences of facts should not be disturbed on review even though the appellate court may feel its own evaluations and inferences are as reasonable. Where issues of credibility are involved, we will give great deference to the findings of the trier of fact and these findings will not be overturned unless they are manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In this case, the sidewalk was constructed above the level of the lawn and spaces were left in the sidewalk to allow for drainage. These spaces were covered with metal covers that were designed to fit into grooves in the concrete, providing an even walking surface. Prior to her fall, the plaintiff had traversed a distance of the sidewalk from the street to a point close to the State Office Building. She had crossed several of the drain covers before she fell on the cover at issue here. However, the drain covers encountered by the plaintiff prior to the one upon which she tripped were flush with the concrete.
The evidence and testimony show that the drain cover on which the plaintiff fell was not positioned flush in its groove, but was projecting upward over the sidewalk on one side. Also, the drain cover had a layer of expansion metal bolted to it to prevent pedestrians from slipping on it in wet weather. This caused the drain cover to be somewhat thicker than the others. The drain cover was also gray in color, which contrasted somewhat with the color of the sidewalk, but did not contrast dramatically. Based upon our review of the record, we find that the condition of this drain cover, as encountered by the plaintiff, did pose a substantial risk of tripping to pedestrians traversing the sidewalk.
Also, the plaintiff's engineering expert, Robert Earl Jones, in his deposition offered suggestions for correcting the hazard posed by this drain cover. These suggestions included painting it a different color from the sidewalk and using different materials to prevent slippage.
The record also contains testimony by expert witnesses concerning methods of constructing a drain which could be utilized to remedy this defect. The record shows that the defective condition of the drain cover could have easily been remedied by simply trimming off one side, allowing it to fit into the groove in the sidewalk.
Further, there is no dispute in this case that the plaintiff fell on the protruding drain cover and that her fall caused her injury. Therefore, the trial court did not err in finding that this defect in the sidewalk constituted an unreasonably dangerous condition and that the defect caused the plaintiff's injury.

NOTICE
In addition to showing that there was a defect in the sidewalk, posing an unreasonable risk of harm and that the defect caused her injury, the plaintiff was also required to show that the State had actual or constructive notice of the defect. The defendant argues that the trial court erred in finding that the State had notice of the defect.
As stated earlier, actual notice is knowledge of a dangerous defect or condition by a corporate officer or employee of the public entity having a duty either to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities.
*624 Paul Young testified that, on two occasions, he had tripped on the drain cover and that he reported the hazard to the security guard on duty. The security guard, Merle Miller, testified that he did not remember Mr. Young reporting a defect in the drain cover to him. However, Mr. Miller also testified that he was seventy years of age and that he had trouble with his memory.
Further, the defendant argues that the security guard was not the proper person to whom to report the defective condition. The defendant contends that the security guard was not a state employee and therefore under LSA-R.S. 9:2800, he was not a proper person to whom to report the defective condition.
Mr. Miller was an employee of Capital Security which was employed by the State to provide security at the State Office Building. Mr. Miller testified that his duties included the preparation of accident reports. We find that under the circumstances of this case, Mr. Miller was one of several persons to whom it would be logical for a person to report the hazard presented by this drain cover. We also recognize that the trial court found Mr. Young to be a credible witness.
There are additional factors in this record upon which the trial court could base its conclusion that the defendant had actual notice of the defective condition of this drain cover. Earl Owen, the facility maintenance manager of the building, testified he was aware only of persons slipping on the drain cover in wet weather, not instances where individuals tripped on the drain cover. However, this testimony was contradicted by that of Rick Headrick, an insurance claims representative with the State Office of Risk Management, who stated that Mr. Owen told him that several people had caught their feet on the drain cover, causing them to fall, but that the plaintiff was the only one to be seriously injured.
This testimony is corroborated by the defendant's answers to interrogatories which state that "there have been complaints of individuals tripping and/or falling on the walkways prior to June 11, 1991, but the defendant does not have any names or addresses of those alleged accident victims."
Also, the plaintiff testified that Mike Pyles, a building employee who assisted her after her injury, told her that she was the second or third person he had taken to the hospital following a fall on the drain cover. At trial, Mr. Pyles denied telling the plaintiff that others had fallen on the drain cover and were taken to the hospital. However, he also testified that he had been told what to say prior to coming to court and that his job would not be protected if he testified against the State. The trial court apparently did not accept Mr. Pyles' testimony on this point while finding that the plaintiff's testimony was credible.
As stated above, issues of credibility are left to the discretion of the trial court and will not be reversed absent a showing of abuse of that discretion. The record before us shows that the defendant was aware that the elevated drain cover was a trap and posed a danger to pedestrians. In this case we find that the trial court did not abuse its discretion in finding that the defendant had actual notice of the defective condition of the drain cover.

COMPARATIVE FAULT
The defendant also argues that the trial court erred in failing to assess some percentage of fault to the plaintiff. The defendant contends that the drain cover was a different color from the sidewalk and was clearly visible. The defendant claims that several thousand people per year traverse this sidewalk without incident or injury. The defendant asserts that, had the plaintiff properly observed where she was walking, she would not have tripped on the drain cover. Therefore, the defendant argues that the plaintiff should have been assessed some percentage of fault. This argument is meritless.
Comparative fault applies in strict liability cases. Landry v. State of Louisiana, 495 So.2d 1284 (La.1986). It is well settled that the allocation of comparative fault is a factual matter lying within the discretion of the trial court, and such determinations will not be disturbed on appeal in the absence of manifest error. Daigle v. Legendre, 619 So.2d 836 (La.App. 1st Cir. 1993), writ denied 625 So.2d 1040 (La.1993).
*625 A pedestrian has a duty to see that which should have been seen. He is not required to look for hidden dangers, but he is bound to observe his course in order to see if his pathway is clear. A pedestrian is held to have seen those obstructions in his pathway which would be discovered by a reasonably prudent person exercising ordinary care under the circumstances. Carr v. Covington, 477 So.2d 1202 (La.App. 1st Cir.1985), writ denied 481 So.2d 631 (La.1986); Ehrman v. Holiday Inns, Inc., 94-0312 (La.App. 4th Cir. 3/29/95), 653 So.2d 732. However, pedestrians cannot be expected to constantly look down while walking on a busy street. Bessard v. State, Department of Transportation and Development, 94-0589 (La. 11/30/94), 645 So.2d 1134; Ehrman v. Holiday Inns, Inc., supra. A pedestrian is not required to constantly observe the surface of the walk or to "exercise the care that would be necessary in traversing a jungle." Johnson v. New Orleans Department of Streets, 94-1542 (La.App. 4th Cir. 2/23/95) 650 So.2d 1216.
In this case, the plaintiff's accident occurred during the mid-morning hours and the sidewalk was dry. There is no showing in the record that the plaintiff's view of the sidewalk was obstructed in any way or that she was proceeding in haste. However, the drain cover she encountered and was injured upon was elevated enough to cause a hazard and yet was not so apparent as to be easily observed. Therefore, even though the plaintiff was proceeding with reasonable care, she was not able to discern the trap she encountered. Further, the defendant had actual notice of the hazard posed by the drain cover and failed to remedy it. Under these circumstances, we find, as did the trial court, that the plaintiff was not at fault in this accident.

GENERAL DAMAGES
The defendant further contends that the plaintiff's general damage award of $95,000 was excessively high. The defendant also argues that the trial court erred in finding that the plaintiff's nerve damage was caused by this accident, rather than by her multiple sclerosis. These arguments are meritless.
Before a general damage award can be altered on appeal, the record must show a clear abuse of the trial court's great discretion. The initial inquiry must always be directed at the particular injuries and their effects on a particular injured person. It is only after an articulated analysis of the facts discloses an abuse of discretion that the award may, on appellate review, for articulated reasons, be considered either excessive or insufficient. Only after such determination of abuse has been reached is a resort to prior awards appropriate for purposes of then determining what would be an appropriate award for the present case. Reck v. Stevens, 373 So.2d 498 (La.1979); Whitacre v. Halo Optical Products, 501 So.2d 994 (La.App. 2d Cir.1987). After such a determination is made, the court of appeal may amend the award, and then only to the extent of lowering (or raising) it to the highest (or lowest) amount reasonably within the trial court's discretion. Coco v. Winston Industries, 341 So.2d 332 (La.1976); Durkee v. City of Shreveport, supra.
In the present case, we do not find that the general damage award of $95,000 is an abuse of the trial court's great discretion. The medical evidence indicates that the plaintiff suffered extreme pain from her injury and was required to wear an external fixator for a number of weeks which was also extremely painful. She had to undergo surgery to repair her fractured arm and was hospitalized for several days. While her arm was healing, it became infected. The plaintiff's arm is now crooked and is permanently scarred. She also suffers some permanent disability as a result of this accident. She suffers a 14% impairment to her arm and an 8% impairment to her body as a whole.
Further, the record supports the trial court's finding that the numbness in the plaintiff's hand is attributable to this accident. Her treating physician, Dr. Springmeyer, stated in his deposition that the onset of numbness in her hand coincided with this injury and that the injury could have caused the numbness. A plaintiff's disability is presumed to have resulted from an accident if, before the accident the injured person was in good health, but commencing with the accident *626 the symptoms of the disabling condition appear and continuously manifest themselves afterwards, provided that the medical evidence establishes a reasonable possibility of a causal connection between the accident and the disabling condition. Durkee v. City of Shreveport, supra. Therefore, the trial court's finding that the injury caused nerve damage to the plaintiff's hand is supported by the record and will not be reversed on appeal.
This assignment of error has no merit.

CONCLUSION
For the reasons stated above, we affirm the trial court judgment in favor of the plaintiff, Nancy D. Boddie, and against the defendant, the State of Louisiana, finding that the defective condition in the defendant's sidewalk presented an unreasonable risk of harm, that the defendant had actual notice of the defect and that the plaintiff was free from fault.
We further affirm the trial court's award to the plaintiff for general damages in the amount of $95,000, as well as the award for special damages. To the extent allowed by law, costs are assessed to the defendant.
AFFIRMED.