870 So.2d 1105 (2004)
Darlene JOHNSON, et al., Plaintiff-Appellant
v.
CITY OF MONROE, Defendant-Appellee.
No. 38,388-CA.
Court of Appeal of Louisiana, Second Circuit.
April 7, 2004.
*1107 Crawford & Anzelmo, by Brian E. Crawford, Monroe, for Appellant.
Nanci Summersgill, City Attorney, Lakoshia R. Roberts, Assistant City Attorney, for Appellee.
Before WILLIAMS, GASKINS and LOLLEY, JJ.
LOLLEY, J.
This is a personal injury suit arising out of a trip and fall accident on city property in Monroe, Louisiana. Darlene and Prentice Johnson (the "Johnsons") appeal from a judgment of the Fourth Judicial District Court in Ouachita Parish, State of Louisiana in favor of the City of Monroe (the "City"). For the following reasons, we affirm.

FACTS
On the night of September 25, 2001, Darlene Johnson tripped and fell in a grassy area in front of Monroe City Court after allegedly stepping into a "hole," (as characterized by the Johnsons) while leaving the annual ArkLaMiss Fair (the "fair"). At the time of the accident, she was accompanied by her two children and friends. Mrs. Johnson's entourage had attended the fair for several hours. At approximately 10:15 p. m., Mrs. Johnson took a short cut back to the car through a grassy area when the accident occurred. As a result, Mrs. Johnson suffered an avulsion fracture of her left ankle requiring two surgeries and rehabilitation. Subsequently, she and her husband, Prentice Johnson filed this lawsuit against the City.
In that lawsuit, the Johnsons alleged that Mrs. Johnson sustained her injury on property owned and maintained by the City, which is therefore negligent pursuant to La. C.C. art. 2315, art. 2317 and/or art. 2317.1. They contended that Mrs. Johnson tripped in a four-inch hole, the City had actual or constructive knowledge of the hole's existence, and the hole posed an unreasonable risk of danger. They further argued that the failure of the City to repair the hole or divert the thousands of pedestrians away from the hole was the cause-in-fact of the injury sustained by Mrs. Johnson. The Johnsons also argued that the hole was not visible to pedestrians at night. Finally, they averred that the City's investigator, Mike Shore ("Shore"), stated that liability was "clear" and assured the Johnsons that their claim would be paid.
Conversely, the City maintained that Mrs. Johnson was contributorily negligent, because she chose to walk in the grass at night even though there were paved sidewalks which would have led her to and from the fair. The City disputes the Johnsons' characterization of the site of the accident as a hole, and it maintains instead that it was a "depression or sloping indentation." The City further contends that the overall evidence does not support the *1108 Johnsons' assertion that the accident site was a "defective hole," specifically pointing to inconsistent witness testimony. Furthermore, the City disputes the Johnsons' assertion that Shore stated that the City would pay the claim. Nor does it agree with the Johnsons' claim that Shore's setting of reserves was an admission of liability on the City's part. Additionally, the City contends the Johnsons have not met the burden of proof that the City knew or should have known of the defect to assert negligence liability under La. C.C. art. 2315 and/or strict liability under La. R.S. 9:2800. Finally, and in the alternative, the City contends that it is entitled to immunity pursuant to La. R.S. 9:2798.1.
The parties do not dispute that the City had custody of the accident location and that the City surveyed and inspected the areas surrounding the fairgrounds for possible dangers prior to and during the fair. The parties agree that Mrs. Johnson fell and sustained an injury while traversing a grassy area in front of Monroe City Court; that thousands of people attended the fair; and that although hundreds of people traversed the grassy area traveled by Mrs. Johnson, she was the only one who reported having an accident.
After a trial of the matter, judgment was rendered in favor of the City. In that judgment, the trial court stated, "... that with regard to the facts of this case, the `depression' or `indentation' at issue did not rise to the level of being unreasonably dangerous as required by strict liability or negligence theories ....," pursuant to the applicable Louisiana Civil Code articles and jurisprudence. This appeal by the Johnsons ensued.

DISCUSSION
On appeal, the Johnsons raise one assignment of error contending the trial court erred in finding that the depression or indentation was not unreasonably dangerous. For the following reasons, we disagree.
Specifically, as to strict liability claims against a public body, such as a municipality, La. R.S. 9:2800 applies and it provides as follows, in pertinent part:
A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
* * * *
C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.
D. Constructive notice shall mean the existence of facts which infer actual knowledge....
A plaintiff must establish the following elements to prevail on a claim against a public entity, such as the City, based on either negligence or strict liability: (1) the entity's custody or ownership of the defective thing; (2) the defect created an unreasonable risk of harm; (3) the entity's actual or constructive notice of the defect and failure to take corrective action within a reasonable time; and, (4) causation. See, Joseph v. City of New Orleans, XXXX-XXXX (La.App. 4th Cir.03/05/03), 842 So.2d 420; Oster v. Dep't of Transp. & Dev., State of La., 582 So.2d 1285, 1288 (La.1991).
*1109 Generally, regarding claims of liability, Louisiana C.C. art. 2317.1 provides, in pertinent part, as follows:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.
This article effectively turns strict liability into negligence claims. Reitzell v. Pecanland Mall Associates, Ltd., 37,524 (La. App.2d Cir.08/20/03), 852 So.2d 1229; Solito v. Horseshoe Entertainment, 36,667 (La. App.2d Cir.12/18/02), 834 So.2d 610. Additionally, article 2317.1 actions require proof that the defendant had custody of the thing causing the injury, that the thing contained a defect, that is, a condition creating an unreasonable risk of harm, and that the defective condition caused plaintiff's injury. Reitzell, supra; Davis v. Diamond Shamrock Refining and Marketing Co., 34,309 (La.App.2d Cir.12/06/00), 774 So.2d 1076.
There is no fixed rule for determining whether the thing presents an unreasonable risk of harm. The trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.03/04/98), 708 So.2d 362. The concept of whether a defect presents an unreasonable risk of harm, which requires a balancing of the risk and utility of the condition, is not a simple rule of law which can be applied mechanically to the facts of the case. Reitzell, supra; Solito, supra.
The degree to which a danger is evident to a potential victim is one factor in determining whether the condition is unreasonably dangerous. See Joseph v. City of New Orleans, supra; Williams v. City of Baton Rouge, XXXX-XXXX (La.App. 1st Cir.03/28/03), 844 So.2d 360; Shavers v. City of Baton Rouge, XXXX-XXXX (La.App. 1st Cir.09/28/01), 807 So.2d 883, writ denied, 2001-2848 (La.01/04/02), 805 So.2d 207. The accident history of the defect is also a relevant consideration in the unreasonable risk evaluation. Reed, supra; Boyle v. Board of Sup'rs, Louisiana State University, 96-1158 (La.01/14/97), 685 So.2d 1080. The Boyle court found the risk of injury was not great because the evidence showed that the plaintiff was the only person ever reported to have fallen at that location despite it being a high traffic area.
In Reed, the supreme court applied an unreasonable risk of harm analysis and noted that, "Because of the plethora of factual questions and other considerations involved, the issue [of whether an unreasonable risk of harm exists] necessarily must be resolved on a case-by-case basis." In a similar vein, this court stated "the determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case. The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically." Johnson v. Brookshire Grocery Co., 32,770 (La.App.2d Cir.03/01/00), 754 So.2d 346, writ denied, XXXX-XXXX (La.05/26/00), 762 So.2d 1107.
Moreover, this court recognized in Wood v. Cambridge Mutual Fire Insurance Company, 486 So.2d 1129, 1133 (La.App. 2d Cir.1986) that:

*1110 The yard of a residence is not intended or expected to have a completely "table-top" smooth surface. Yards usually present minor hazards or conditions which could cause an unobservant and inattentive person to trip and fall. Yards can and usually do have irregularities and minor obstacles such as depressions, drains, faucets, trees, shrubs, and tree roots and are not intended or designed for use as a walkway without observation and care as are sidewalks and designated walkways. Such conditions do not amount to defects that present an unreasonable risk of injury to tenants.
An appellate court cannot disturb the factual findings of the trial court in the absence of manifest error. Hope v. City of Shreveport, 862 So.2d 1139, 1144 (La. App.2d Cir.12/17/03); Currie v. Myers, 32,633 (La.App.2d Cir.01/26/2000), 750 So.2d 388, writ denied, XXXX-XXXX (La.03/17/00), 756 So.2d 316. On appeal, facts are reviewed to determine whether the trial court's judgment was manifestly erroneous, clearly wrong based on the evidence, or clearly without evidentiary support. Hope, supra; LeBlanc v. Stevenson, XXXX-XXXX (La.10/17/00), 770 So.2d 766; Ambrose v. New Orleans Police Dept. Ambulance Service, 93-3099, 93-3110, 93-3112 (La.07/05/94), 639 So.2d 216. When testimony on an issue conflicts, reasonable evaluations of credibility and inferences of fact should not be disturbed on review. Rosell v. ESCO, 549 So.2d 840 (La.1989).
In the case sub judice, there is no dispute between the parties that the City had custody of the accident site and that Mrs. Johnson fell and injured herself at that site; thus, we must determine if the trial court committed manifest error in finding that the indentation was not an unreasonable risk of harm. The instant case concerns an accident on a grassy area on a public domain, not a concrete pathway nor a residential grassy area. Nevertheless, the jurisprudence cited above is applicable, by analogy, in determining whether the evidence in this case supports the trial court's finding that no unreasonable risk of harm existed.
As discussed herein, the duty owed by the City to persons on its property is governed by a standard of reasonableness. The owner of a premise cannot be held responsible for all injuries resulting from any risk posed by its property, only those presenting an unreasonable risk of harm to others. See, Wiley v. Sanders, 37,077 (La.App.2d Cir.06/13/03), 850 So.2d 771, writ denied, XXXX-XXXX (La.10/31/03), 857 So.2d 487. Here, the evidence supports a finding that the City acted reasonably to protect patrons of the fair as they traveled to and from the event. Specifically, a review of the record indicates that the Monroe Police Department conducted a thorough survey of the surrounding properties prior to and during the fair on behalf of the City. Captain Jimmy Fried testified that prior to Mrs. Johnson's fall, he as well as other city police officers inspected the grounds for potential hazards. Said inspection did not indicate that the site of the indentation was readily noticeable. Moreover, it is also noteworthy that thousands of other people attended the fair during the three day period with several hundred people traveling the same grassy area without a reported incident. It is also reasonable to expect that a grassy area would not always be a "table-top" smooth surface. See, Wood, supra. Thus, the overall evidence, particularly the photographs relied upon by the trial court, does not support a finding that the site of the accident was an obvious defect that would have alerted the City of a potential hazard. So considering, the trial court found that the site was more a sloping *1111 indentation rather than a defective hole, as characterized by the Johnsons, and that this indentation did not present an unreasonable risk of harm. Accordingly, after review of all the factors involving this incident, we conclude that the trial court was not manifestly in error and reasonably determined that the site of Mrs. Johnson's fall did not rise to the level of an unreasonable risk.

CONCLUSION
For the foregoing reasons, we affirm the trial court's decision. Costs of this appeal are assessed to the Johnsons.
AFFIRMED.