997 So.2d 594 (2008)
Velma MOORE, Plaintiff-Appellant,
v.
OAK MEADOWS APARTMENTS, Defendant-Appellee.
No. 43,620-CA.
Court of Appeal of Louisiana, Second Circuit.
October 22, 2008.
*595 The Smith Law Office, L.L.C. by Eskridge E. Smith, Jr., Bossier City, for Appellant.
Ungarino & Eckert, L.L.C. by J. Michael Nash, Shreveport, Brian D. Smith, for Appellee.
Before WILLIAMS, CARAWAY and MOORE, JJ.
MOORE, J.
The plaintiff fell and sustained injuries when she stepped in a large crack in the concrete driveway leading to and from her apartment unit in the Oak Meadow Apartments. She sued the complex, alleging that it had a duty to provide a sidewalk or pathway for residents to walk from the complex or to reasonably maintain the driveway and shoulder. The trial court granted the defendant's motion for summary judgment, but provided no oral or *596 written reasons for judgment. For the following reasons, we reverse and remand the case for further proceedings.

Facts
According to her deposition, the plaintiff, Velma Strickland Moore, lived in Building "L" of the Oak Meadows Apartments off Centenary Boulevard in Shreveport for approximately one year prior to January 4, 2006, the date of the accident that gave rise to this lawsuit. Ms. Moore, who was 57, suffered from depression and schizophrenia. She moved to Oak Meadows Apartments so that she could walk to her therapy sessions. She is a widow who has been unemployed for at least 16 years before the accident.
On January 4, 2006, she was walking with her granddaughter, Brittany Yates, age 14, on the driveway that provided ingress and egress to the rear units of the complex. Ms. Moore was on her way to group therapy at the Family Life Development Center.
Ms. Moore stated that she had walked up and down that driveway "thousands" of times. She was aware that the driveway had several large cracks, breaks and holes in the middle of the drive. On this day, as she was walking up the hill on the left side of the drive, she said she saw an oncoming car fast approaching. Ms. Moore and her daughter started to move to the other side of the driveway to avoid the vehicle when she stepped in a hole in the driveway, rolled her ankle, and fell. The hole was big enough for her foot to fit into and was approximately 1"-1½" deep.
Ms. Moore stated that the left shoulder of the driveway was covered with shrubs that prevented her from walking on the shoulder, so she tried to move to the right side of the road in case the driver of the vehicle did not see her.
After she fell, her granddaughter sought help. A maintenance man helped her to the complex office where the manager called an ambulance. The paramedics arrived but would not take her to the hospital because they said her injury was not severe enough to require an ambulance (or perhaps emergency care). They advised her to see a doctor. The apartment manager told her to go to an orthopedist and send her the bill. Ms. Moore stated that her sister took her to Schumpert Hospital, where she was treated in the ER with a splint for her left foot and also her arm. They also advised her to see an orthopedist. She went to LSU Medical Center five days later to see an orthopedist. They put her in a boot cast and told her she had a fracture. For pain, she was advised to take Advil or Ibuprofren which she took for a couple of days. The scratches to her hand suffered when she fell healed in a couple of days, but Ms. Moore also complained of continued tingling in her fingers allegedly caused by nerve damage to her wrist. She denies prior injury or damage to her elbow and ulnar nerve.
Ms. Moore said the manager of the complex took pictures of the place in the driveway where she fell, but she has not seen the pictures. She was also aware, but had no first hand knowledge, that the cracks in the driveway have been filled with asphalt since the accident.
There was no oral argument at the hearing on the motion for summary judgment and the matter was submitted on briefs. The respective statements of facts are largely in agreement although the plaintiff disputed paragraphs four and five of the defendant's list of undisputed facts, namely, the plaintiff denies that prior to the accident she had personal knowledge of the particular hole or crack in the driveway that caused her to fall. Plaintiff did *597 admit in her deposition that she knew that the driveway had numerous cracks in it because she walked on it daily.
The defendant argues that (1) the defect in the street was open and obvious, and Ms. Moore knew that the crack was in the street, and (2) it owed no duty to the plaintiff in these circumstances.
The trial court apparently agreed and granted the defendant's motion for summary judgment. On appeal, the plaintiff assigns a single error, namely, that the trial court erred in granting the summary judgment.

Discussion
We review the grant of a motion for summary judgment de novo. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342 (La.1991); Steier v. Heller, 31,733 (La.App. 2 Cir. 05/05/99), 732 So.2d 787. A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B). Affidavits in support of or in opposition to motions for summary judgment must be filed into evidence at the hearing on the motion or filed into the record in order for the affidavits to be part of the record on appeal. LSA-C.C.P. art. 966; Hutchinson v. Knights of Columbus, Council No. 5747, XXXX-XXXX (La.2/20/04), 866 So.2d 228.
Both the plaintiff and the defendant expend a large portion of their arguments discussing the applicability of La. R.S. 32:216, which reads:
A. Where sidewalks are provided, it shall be unlawful for any pedestrian to walk along and upon an adjacent highway.
B. Where sidewalks are not provided, any pedestrian walking along and upon a highway shall, when practicable, walk only on the left side of the highway or its shoulder, facing traffic which may approach from the opposite direction.
Both parties contend that the same principles in the statute apply to the private driveway of the apartment, but they disagree on what those principles mean. Their arguments can be reduced to the question of whether the plaintiff was at fault for attempting to cross from the left side of the driveway to the right side.
After consideration, we conclude that the statute is inapplicable to the facts of this case. La. R.S. 32:216the requirement of walking on the left side of a highwaywas enacted for the purpose of protecting pedestrians from highway drivers. By walking on the left side, a pedestrian can see oncoming vehicles and take whatever evasive action is necessary, and at the same time, the driver of the oncoming car can at least have some idea whether the pedestrian sees him coming. If the pedestrian is on the right side of the road with his back to the traffic approaching on his side, he will not see the car coming and may dart out into the road. Likewise, the driver cannot tell if the pedestrian sees him.
The statute was enacted for rural areas where people tend to live along the highways and frequently walk on or along the highway to neighboring businesses and residences, which creates a dangerous situation. See, e.g. Shafouk Nor El Din Hamza v. Bourgeois, 493 So.2d 112, (La.App. 5 Cir. 1986). More importantly, the purpose of the statute is to protect pedestrians from cars, not cracks or other defects in the pavement. In this case, it was not the fact that the plaintiff was walking on the left and moved to the right side of the driveway that caused her injuries. Nor *598 was the plaintiff injured by an oncoming vehicle. In this instance, the plaintiff was injured because she fell after stepping in a large crack in the driveway.
The issues raised by the plaintiff's accident are governed by Art. 2317.1 of the Louisiana Civil Code. This article provides that:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
Under Art. 2317.1, in order for Ms. Moore to recover, she must prove by a preponderance of the evidence that a defect existed in the premises and the defect caused her damages. Further, Ms. Moore is required to prove that the owner or custodian of the complex knew or should have known of the defect that caused her damages, that the damage could have been prevented by the exercise of reasonable care, and that the owner failed to exercise such reasonable care.[1]Heflin v. American Home Wildwood Estates, L.P., 41,073 (La.App. 2 Cir. 7/12/06), 936 So.2d 226.
A defect under Art. 2317.1 is a condition creating an "unreasonable risk of harm." Johnson v. City of Monroe, 38,388 (La.App. 2 Cir. 4/7/04), 870 So.2d 1105, writ denied, XXXX-XXXX (La.6/25/04), 876 So.2d 843. The fact that a pedestrian fell does not elevate automatically the condition of a street to that of an unreasonably dangerous defect. Boddie v. State, 27,313 (La.App. 2 Cir. 9/27/95), 661 So.2d 617; Clark v. Hartford Accident and Indemnity Company, 562 So.2d 50 (La.App. 3 Cir. 1990). To be a defect, the imperfection must pose an unreasonable risk of injury to persons exercising ordinary care and prudence. Boddie, supra.
There is no fixed rule for determining whether the thing presents an unreasonable risk of harm. The trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Simply put, the trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.03/04/98), 708 So.2d 362; Johnson, supra.
There are several factors that may be considered in determining whether a hazard presents an unreasonable risk of harm. The degree to which a danger is evident to a potential victim is one factor *599 in determining whether the condition is unreasonably dangerous. Johnson, supra; (citations omitted). The accident history of the defect is also a relevant consideration in the unreasonable risk evaluation. Reed, supra; Boyle v. Board of Sup'rs, Louisiana State University, 96-1158 (La.01/14/97), 685 So.2d 1080.
This court has previously stated that "the determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case. The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically." Johnson v. Brookshire Grocery Co., 32,770 (La.App.2 Cir. 03/01/00), 754 So.2d 346, writ denied, XXXX-XXXX (La.05/26/00), 762 So.2d 1107.
In Boddie, supra, this court affirmed a judgment awarding damages to the plaintiff who was injured after she tripped and fell over a drain cover that was elevated enough to present a hazard, yet not so much as to be apparent. In the opinion, the panel stated:
A pedestrian has a duty to see that which should have been seen. He is not required to look for hidden dangers, but he is bound to observe his course in order to see if his pathway is clear. A pedestrian is held to have seen those obstructions in his pathway which would be discovered by a reasonably prudent person exercising ordinary care under the circumstances (citations omitted). However, pedestrians cannot be expected to constantly look down while walking on a busy street (citations omitted). A pedestrian is not required to constantly observe the surface of the walk or to "exercise the care that would be necessary in traversing a jungle." Johnson v. New Orleans Department of Streets, 94-1542 (La.App. 4 Cir. 2/23/95) 650 So.2d 1216.
We also noted that the defendant was aware of the particular drain hazard, inasmuch as two or three other people had been previously injured after tripping over the same drain cover.
In Thornton v. Board of Sup'rs of Louisiana State University, 29,898 (La.App. 2 Cir. 10/29/97, 702 So.2d 72), we affirmed a summary judgment in favor of the defendant dismissing the plaintiff's suit, where the plaintiff was injured after she slipped and fell on wet leaves covering the walkway. The plaintiff admitted, however, that she was aware of the wet leaves and the danger that they posed, and she knew that there were other walkways available to her.
In Reed, supra, the plaintiff sued Wal-Mart after she tripped and fell in the parking lot and sustained a broken arm. The parking lot was constructed of 15 foot concrete squares. The plaintiff tripped over an uneven expansion joint which created a 1/4 to 1/2 inch height variance between the slabs. Both the trial court and court of appeal held that the height variance posed an unreasonable risk of harm. The supreme court reversed, however, noting that the surfaces of streets, sidewalks, and parking lots are commonly irregular, and it is not the duty of the party having garde to eliminate all variations in elevations existing along the countless cracks, seams, joints, and curbs. In determining whether the uneven expansion joint posed an unreasonable risk of harm, the court considered several factors, including the small height of the variance, the accident history of the defect, the location of the defect in relation to the store, and the social utility versus the cost of repair.
In Barnes v. Riverwood Apartments Partnership, 38,331 (La.App. 2 Cir. 4/7/04), 870 So.2d 490, a tenant brought a negligence *600 action against the landlord for injuries the tenant received when he stepped in a hole while walking across a common area of an apartment complex. The trial court granted summary judgment in favor of the apartments. We reversed and remanded the case to the trial court, finding that there were genuine issues of material fact regarding management's awareness of the hole and the hazard it posed to those traversing the lawn.
Finally, in Heflin, supra, we affirmed the trial court's judgment in favor of the defendant trailer park where the plaintiff was injured when she tripped and fell over a speed bump on a park roadway. Using a balancing test in which we weighed the social utility of the speed bump versus the risk that an inattentive pedestrian may trip over it, we concluded that the speed bump was not a defect.
In this case, the circumstances of Ms. Moore's injury present a myriad of factual considerations that preclude summary judgment on de novo review, including the question of whether the cracks and holes in the driveway posed an unreasonable risk to pedestrians, the availability, if any, of other pathways for pedestrians to enter and exit the units, the defendant's knowledge of the cracks, and the cost of repair weighed against the risk posed. Although a driveway or street commonly has surface irregularities that do not constitute defects, the extent of the irregularities is an important consideration in this case, especially under the exigent circumstances of a speeding, oncoming vehicle, and where there is no other reasonable pathway to lead pedestrian traffic out of the complex. Finally, we note that although Ms. Moore admitted that she knew that the street had numerous large cracks, her general awareness that there were numerous cracks in the pavement is distinguishable from those cases involving the plaintiff's knowledge of a single hazard such as in Heflin, supra, Thornton, supra, and others. Stated differently, there is a genuine issue of material fact as to whether Ms. Moore knew of the specific crack she stepped into.
Accordingly, we reverse the summary judgment in favor of the defendant and remand this case to the trial court for further proceedings.
REVERSED AND REMANDED.
NOTES
[1] The former theory of strict liability of Article 2695 is no longer addressed in the Chapter on Lease in the Louisiana Civil Code so that the general article for things in custody, Article 2317.1, governs. The former article provided:

The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
We noted in Heflin that the sole difference between a claim under former Art. 2695 and Art. 2317.1 was the absence of the requirement in the former article that the owner knew or should have known of the defect, which effectively turns strict liability claims into negligence claims.