GASKINS, J.
 

 | Rn this personal injury case arising from a trip and fall on the premises of the defendant/landlord, the plaintiff/lessee appeals from a summary judgment dismissing his suit with prejudice. We affirm.
 

 FACTS
 

 The plaintiff, Calvin Greely, and his mother, JoAnn Greely, leased a residence on Georgia Street in Monroe from the defendant, OAG Properties, LLC [“OAG”].
 
 [1]
 
 The lease agreement they signed, which was for a period of one year from August 2005 to July 2006, included a provision requiring the lessee to maintain the premises. The lease agreement also contained an indemnification clause releasing the landlord from liability for any damage or injury to the lessee or lessee’s family and requiring the lessee to hold the landlord harmless from any and all claims. In relevant part, the lease stated:
 

 11. MAINTENANCE AND REPAIR; RULES. Lessee will, at its sole expense, keep and maintain the Premises and appurtenances in good and sanitary condition and repair during the term of this Agreement and any renewal thereof....
 

 [[Image here]]
 

 18. INDEMNIFICATION. Lessor shall not be liable for any damage or injury of or to the Lessee, Lessee’s family, guests, invitees, agents or employees or to any person entering the Premises or the building of which the Premises are a part or to goods or equipment, or in the structure or equipment of the structure of which the Premises are a part, and Lessee hereby agrees to indemnify, defend and hold Lessor harmless from any and all claims or assertions of every kind and nature.
 

 12The plaintiff and his mother signed the unit inspection report on September 15, 2005, after inspecting the premises; it included notations that all portions of the yard were acceptable.
 

 On February 27, 2006, the plaintiff and his brother Robert were cleaning up the backyard when the plaintiff tripped on the stump of a sapling. He fell face down on a concrete slab and hit his head. The concrete slab was located behind the house;
 
 *492
 
 the yard debris he had been picking up was on the far side of the slab away from the house. The plaintiff was taken to the hospital by ambulance where he received more than 30 stitches for a cut over his left eye. Years before this accident, the plaintiff had a brain aneurysm which was removed; following that surgery, he began suffering seizures. At the time of the accident, he was still taking daily doses of medication for these seizures. He and his mother stated that he had been free of seizures for four years before his February 2006 fall; however, they testified in their depositions that after this head injury, he began having seizures again.
 

 On February 21, 2007, the plaintiff filed suit against OAG, alleging that it had “apparently cut saplings which had grown in the yard but had cut them so as to leave a stump high enough to cause a trip hazard to any person walking in the yard.” The plaintiff accused OAG of “maintaining an unreasonably dangerous condition in the form of a sapling stump presenting a trip hazard in the yard of its residence intended for lease.” Additionally, the plaintiff asserted that OAG failed to warn him about the presence of the stump or to inspect its premise so as to discover dangerous conditions | .¡before leasing it, and that it left the concrete slab in the yard, which also posed a hazard. The plaintiff asserted that his injuries included a concussion, headaches and disfigurement. In his first supplemental and amending petition, the plaintiff added OAG’s insurer, State Farm Fire and Casualty Company, as a defendant.
 

 In their answer, the defendants asserted that the accident was the sole fault of the plaintiff. They denied that there was any defect or hazard on the premises. They also stated that the sapling stumps were open and obvious to everyone, including the plaintiff who had lived there for six months prior to the incident and knew or should have known of their presence. Finally, they pled comparative fault as an affirmative defense and requested a jury trial.
 

 In May 2008, the defendants filed a motion for summary judgment. Attached as exhibits in support of the motion were copies of the lease and the unit inspection report; photos of the area taken about a week after the plaintiff was injured; and the affidavit of Hamid R. “Tony” Sanaie, a managing member of OAG who served as the landlord. He stated that in August 2005, he cleaned the yard by cutting sapling tops and removing all tops, cuttings, debris and leaves as required by Section 8 Monroe Housing Authority. He further stated that the sapling stumps that remained were readily visible as the ground cover was cleared away and that he sprayed the area with Round-Up®. At the time of the unit inspection on September 15, 2005, he stated that the sapling stumps were clearly visible. Mr. Sanaie attested that he never received any complaints from the plaintiff or his |4mother about the area where the plaintiff fell. Also submitted were the depositions of the plaintiff, his mother, and his brother Robert.
 

 The defendants argued that the lease signed by the plaintiff before he moved into the premises in September 2005 contained an indemnification clause and a provision by which the lessee undertook to maintain the premises. They noted that the unit inspection report was signed by the plaintiff and his mother on September 15, 2005, after inspecting the premises with Mr. Sanaie. The defendants contended that the tree stump did not present an unreasonable risk of harm and that the plaintiff had a duty to be aware of his surroundings. .
 

 
 *493
 
 The plaintiff filed an opposition to the motion for summary judgment. Attached to the opposition were his affidavit and four photos. He asserted that the stump was about five inches high and one and three quarter inches wide. He stated that the landlord told him he was going to clean up that area and that he did not know the stump was there because it was covered with leaves.
 

 The motion for summary judgment was argued before the trial court and taken under advisement in August 2008. Subsequently, the trial court granted the motion without reasons; judgment in conformity with this ruling was signed on October 3, 2008.
 

 The plaintiff appeals.
 

 _kLAW
 

 Summary judgment
 

 Appellate courts review summary judgments
 
 de novo
 
 under the same criteria that govern a district court’s consideration of whether summary judgment is appropriate.
 
 Schroeder v. Board of Supervisors of Louisiana State University,
 
 591 So.2d 342 (La.1991);
 
 Costello v. Hardy,
 
 2003-1146 (La.1/21/04), 864 So.2d 129. A court must grant a motion for summary judgment “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B).
 

 The burden of proof remains with the movant. La. C.C.P. art. 966(C)(2). However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant’s burden on the motion does not require him to negate all essential elements of the adverse party’s claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact. La. C.C.P. art. 966(C)(2).
 

 Trip and fall
 

 Under Louisiana law, the owner/lessor is generally hable for the condition of the leased premises.
 
 Allstate Insurance Company v. Veninata,
 
 |fi2006-1641 (La.App. 4th Cir.11/7/07), 971 So.2d 420,
 
 writ denied,
 
 2008-0067 (La.3/7/08), 977 So.2d 918;
 
 McCloud v. Housing Authority of New Orleans,
 
 2008-0094 (La. App. 4th Cir.6/11/08), 987 So.2d 360. However, a lessor may shift responsibilities to a lessee, including liability for injury resulting from defects in the property, because contracting parties can waive warranties and obligations in the codal articles and statutes, so long as such waivers do not affect the rights of others and do not harm the public good.
 
 Tassin v. Slidell Mini-Storage, Inc.,
 
 396 So.2d 1261 (La. 1981);
 
 Veninata, supra.
 

 Liability for a thing under one’s ownership or custody, such as a tree, is governed by La. C.C. art. 2317.1. An essential element for this liability is that a ruin, vice or defect existed that created an unreasonable risk of harm.
 
 Frazier v. Bryant,
 
 41,978 (La.App.2d Cir.4/4/07), 954 So.2d 349. There is no fixed rule for determining whether the thing presents an unreasonable risk of harm. The trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Simply put, the trier of fact must decide whether the social value and utility of the
 
 *494
 
 hazard outweigh, and thus justify, its potential harm to others.
 
 Reed v. Walr-Mart Stores, Inc.,
 
 1997-1174 (La.3/4/98), 708 So.2d 362;
 
 Johnson v. City of Monroe,
 
 38,388 (La.App.2d Cir.4/7/04), 870 So.2d 1105,
 
 writ denied,
 
 2004-1130 (La.6/25/04), 876 So.2d 843.
 

 A landowner is not liable for an injury that results from a condition that should have been observed by the individual in the exercise of | Reasonable care or was as obvious to a visitor as it was to the landowner.
 
 McCloud, supra.
 

 La. C.C. art. 2696 states:
 

 The lessor warrants the lessee that the thing is suitable for the purpose for which it was leased and that it is free of vices or defects that prevent its use for that purpose.
 

 This warranty also extends to vices or defects that arise after the delivery of the thing and are not attributable to the fault of the lessee.
 

 La. C.C. art. 2699 states:
 

 The warranty provided in the preceding Articles may be waived, but only by clear and unambiguous language that is brought to the attention of the lessee. Nevertheless, a waiver of warranty is ineffective:
 

 (1) To the extent it pertains to vices or defects of which the lessee did not know and the lessor knew or should have known;
 

 (2) To the extent it is contrary to the provisions of Article 2004; or
 

 (3)In a residential or consumer lease, to the extent it purports to waive the warranty for vices or defects that seriously affect health or safety.
 

 La. R.S. 9:3221 provides:
 

 Notwithstanding the provisions of Louisiana Civil Code Article 2699, the owner of premises leased under a contract whereby the lessee assumes responsibility for their condition is not liable for injury caused by any defect therein to the lessee or anyone on the premises who derives his right to be thereon from the lessee, unless the owner knew or should have known of the defect or had received notice thereof and failed to remedy it within a reasonable time.
 
 [2]
 

 Where the language of the provision is clear and unambiguous, the law does not require that a transfer of liability provision, pursuant to La. R.S. 9:3221, be brought to the plaintiffs attention or that it be explained to him.
 
 Ford v. Bienvenu,
 
 2000-2376 (LaApp. 4th Cir.8/29/01), 804 So.2d 64,
 
 writ denied,
 
 2001-2688 (La.12/14/01), 804 So.2d 639.
 

 Signatures on an agreement are not mere ornaments. A person who signs a written agreement is presumed to know its contents and cannot avoid its obligations by claiming that he did not read it, that he did not understand it, or that it was not explained.
 
 Southern Treats, Inc. v. Titan Properties, L.L.C.,
 
 40,873 (La. App.2d Cir.4/19/06), 927 So.2d 677,
 
 writ denied,
 
 2006-1170 (La.9/15/06), 936 So.2d 1271.
 

 
 *495
 
 DISCUSSION
 

 The plaintiff contends that the landlord created an unreasonably dangerous condition by cutting the saplings next to an unused concrete slab. Because the stump was allegedly covered with leaves, the plaintiff asserts that the danger was not obvious. As to the indemnification provision of the lease, the plaintiff argues that since that provision was not initialed by the lessees, there is no evidence that the provision was brought to their attention, as required by La. C.C. art. 2699. He also claims that the indemnification provision, which is authorized under La. R.S. 9:3221, has no application here because the landlord created the dangerous condition and knew of it prior to the lease.
 

 On appeal, the defendants observe that the plaintiff did not claim that the indemnification clause was ineffective before the trial court and that, Reven now, he does not cite authority to support his contention that the clause had to be initialed to be effective. The defendants argue that a person is presumed to know the contents of what he signs and that the indemnification clause is enforceable under La. R.S. 9:3221.
 

 The defendants also maintain that the trial court correctly concluded that the plaintiff would not be able to meet his burden of proof under La. R.S. 9:3221, thus mandating the granting of summary judgment. They assert that the plaintiff and his mother assumed the responsibility of maintaining the yard during the lease term. Thus, if the alleged defect was less visible at the time of the accident, the blame for that fell upon them, not the defendants. According to the defendants, the tree stump did not present an unreasonable risk of harm because it was an open and obvious condition that the plaintiff knew existed. Also, the defendants contend that they did not create any condition of leaves covering the stumps or have notice of the same.
 

 In
 
 Wood v. Cambridge Mutual Fire Insurance Company,
 
 486 So.2d 1129 (La. App. 2d Cir.1986), this court observed:
 

 The yard of a residence is not intended or expected to have a completely “tabletop” smooth surface. Yards usually present minor hazards or conditions which could cause an unobservant and inattentive person to trip and fall. Yards can and usually do have irregularities and minor obstacles such as depressions, drains, faucets, trees, shrubs, and tree roots and are not intended or designed for use as a walkway without observation and care as are sidewalks and designated walkways. Such conditions do not amount to defects that present an unreasonable risk of injury to tenants.
 

 We agree with the defendants’ position. The stump, in and of itself, was not a defective condition. It was located on the far side of a concrete |1ftslab, behind and away from the house. When the landlord gave the premises over to the tenants to be used and maintained by them, the sapling was newly trimmed and the area around it had been cleared. The stump was open and visible to a reasonably observant tenant. The depositions of the plaintiff and his mother showed that they knew that the landlord had cut down the shrubbery and vegetation in the yard in the area where the plaintiff fell. They entered into the lease and inspected the yard in September; if leaves came to conceal the stump by the time of the accident in February, thereby making it potentially hazardous or unreasonably dangerous, the fault for that condition lies solely with the tenants for neglecting their responsibly to
 
 *496
 
 maintain the yard.
 
 [3]
 
 As the landlord neither created the alleged hazard nor had any notice of its existence, the lease provision authorized by La. R.S. 9:3221 is effective.
 

 Like the trial court, we find that summary judgment was appropriate under the facts of this case. Accordingly, we affirm the trial court judgment dismissing the plaintiffs suit.
 

 CONCLUSION
 

 The trial court ruling which granted summary judgment in favor of the defendants and dismissed the plaintiffs suit with prejudice is affirmed. Costs of this appeal are assessed to the appellant, Calvin Greely.
 

 AFFIRMED.
 

 [1]
 

 . While the lease named Ms. Greely as the "Lessee," it also specified that the premises were to be occupied by “Lessee and Lessee’s immediate family" which was to consist of her and Calvin exclusively; Calvin signed both the lease and the related unit inspection report.
 

 [2]
 

 . Comment (h) to La. C.C. art. 2699 provides, in pertinent part:
 

 Civil Code Article 2699 (Rev.2004) deals with the contractual obligations between the parties rather than with the delictual or quasi-delictual obligations that one party may incur vis a vis the other party, or vis a vis third parties. Consequently, Civil Code Article 2699 (Rev.2004) does not supersede the provisions of R.S. 9:3221 which provides for delictual or quasi-delictual obligations incurred as a result of injury occurring in the leased premises. Section 3 of this Act amends and reenacts R.S. 9:3221 to provide that the amendment and reenactment of Civil Code Article 2699 does not change the law of R.S. 9:3221.
 

 [3]
 

 . The deposition testimony of the tenants indicated their awareness of their obligation to maintain the yard. Obviously the lease began at a time when leaves generally are not yet falling, therefore, making the stump visible; however, by February, this seasonal change had occurred.