JiBYRNES, Judge.
This ease was decided by this panel on March 29, 1994, Judge Landrieu dissenting. Beoh v. Watkins, 635 So.2d 424 (La.App. 4 Cir.1994). The Supreme Court granted writs, vacated the judgment of this Court, and remanded the case to this Court for a de novo review of the record with instructions not to give deference to the decision of the trial judge. Beoh v. Watkins, 640 So.2d 1325 (La.1994).
The facts and procedural history are as stated in the previous opinion of this Court, supra.
I. LIABILITY
After careful review of the record, we find by a preponderance of the evidence that the Sewerage and Water Board had notice of an opportunity to repair the hole in the street which caused the accident and the accident was caused solely by the negligence of the Sewerage and Water Board.
| all. DAMAGES
ROBERT BEOH
Robert Beoh suffered injuries to both legs. Mr. Beoh was first under active medical treatment from the date of the accident on May 5, 1989, until November 17, 1989. The injury to his right leg, though less serious than the injury to his left leg, required wire stitches which left a sear. On his left extremity, Mr. Beoh suffered a gash to his foot, as well as a serious soft tissue injury to his left ankle. The ankle injury required that Beoh wear a plastic east from May 5 to May 15. After the cast was removed, Mr. Beoh was forced to use crutches and was not allowed to place weight on the left ankle for another three months, until August 13, 1989. Thereafter, he wore an ankle brace until November 17,1989. During this first period of treatment, Mr. Beoh received physical therapy two to three times a week and took medication for pain and for ankle swelling.
Following his November 17, 1989 discharge from treatment, Mr. Beoh again sought medical treatment on April 2,1990 for pain in his left knee, calf, and ankle. He was actively treated for those problems until August 6, 1990. His doctor’s final opinion indicated that he had suffered a 10 percent anatomical disability, coupled with a disfiguring scar on his left ankle as a result of the severe soft tissue injury to his left lower extremity. The doctor also noted evidence of arthritis, rendering Mr. Beoh sensitive to cold and limiting his climbing, stooping, squatting, and standing. Additionally, standing for long periods would likely cause the ankle to swell.
| oAt trial, Mr. Beoh testified that he experienced frequent swelling in his ankle and was no longer able to play sports,[1] but admitted that the scar did not interfere with his occupation as a bus driver.
Mr. Beoh submitted evidence of medical treatment for three and a half months[2] and past medical expenses totalling $3,083.48. We note, however, that medical insurance payments were regularly deducted from Mr. Beoh’s paycheck and that an itemized bill from Dr. Seltzer indicates charges were made for “Ins Form,” indicating that the medical expenses have been paid, at least in part, by Mr. Beoh’s medical insurer. Nothing in the record indicates that Mr. Beoh’s employer or medical insurer has filed a lien in this ease.
*516 Mr. Beoh also claimed $4,195 in lost wages for the period May 5, 1987 through December 7, 1987.[3] However, the documentary evidence submitted by Mr. Beoh indicates that, although he was absent from his duties as a bus driver for the New Orleans Parish School Board until December 1987, his salary was paid and charged to “sick leave accrued” for the remainder of the 14term ending June 3,1987.[4] Dr. Seltzer testified that on August 18,1987, the wound had healed “quite nicely” and “As of that point, I told him he could start resuming driving his bus again.” Nothing in the record indicates why Mr. Beoh waited an additional four months to resume his duties as a bus driver.
For past medical expenses we award Mr. Beoh $8,084. For general damages we award Beoh $75,000. Istre v. ABC Ins. Co., 517 So.2d 1225 (La.App. 4 Cir.1987); Savoy v. Martiny Warehouse Inc., 539 So.2d 884 (La.App. 4 Cir.1989).[5] Because Mr. Beoh lost no wages prior to his doctor’s medical release to return to work, we make no award for loss of wages.
GEORGE ELPHEAGE
On the night of the accident, Mr. Elpheage was taken to the Veteran’s Administration (VA) Hospital where he was x-rayed, treated for pain, and referred to the orthopedist clinic. Instead of returning to the VA orthopedist clinic, however, on referral of an attorney, Elpheage sought treatment at the Canal Industrial Medical Center on May 19, 1987 where he was examined by Dr. Arthur Blamphin. Dr. Blamphin testified that the examination revealed an impact injury strain to the left knee with contusion. He prescribed pain medication, whirlpool treatment, and referred Mr. Elpheage back to his attorney to be sent to an orthopedist. On May 25, 1987, Mr. Elpheage was Isexamined by Dr. R.L. Shackleton who diagnosed contusions and prescribed pain medication.
Mr. Elpheage subsequently moved to Los Angeles, California, sought treatment on July 7, 1987 at the VA Hospital, and underwent five surgical procedures to his knees. On his left knee, Elpheage underwent an orthoscopic medical meniscectomy in November 1987, a high tibial osteotomy in June 1988, an orthoscopic lateral release for symptoms of chondromalacia in December 1988, and a McKay procedure in 1990. In March 1988, he underwent an orthoscopy to excise a tear of the medical meniscus in his right knee.[6]
Dr. P. James Nugent, one of Mr. Elphe-age’s orthopedic surgeons at the VA Hospital, testified by deposition that Mr. Elphe-age’s injuries “are more likely due to an injury sustained to the knee which was more than likely the motor vehicle accident [of May 5, 1987].” Dr. Nugent opined that Elpheage had a 20% anatomical disability arising out of the knee injuries; would never be pain-free; and more probably than not would require a total replacement of his left knee for relief of his pain. Dr. Nugent estimated that medical costs of a total knee replacement, including recuperation in the hospital for a week to ten days, would range between $12,000 and $21,000 and that, although walking would be unlimited within six weeks to three months, Mr. Elpheage would be restricted to a sedentary life-style for the rest of his life.
Mr. Elpheage submits medical bills $145 from Canal Industrial Medical Clinic, $280 from Dr. R.L. Shackleton, $25,077 from the *517 VA hospital, and 16$166.51 in prescription bills from the Hospital Drug Store in New Orleans. The Veteran’s Administration has filed a lien to recover medical expenses.
At the time of the accident, Mr. Elpheage, a 38 year old diagnosed paranoid schizophrenic, was receiving SSI disability benefits, as well as disability benefits from the Veterans Administration for post-traumatic stress disorder related to his service in the Vietnam war. He testified that prior to the accident he played semi-pro football, sports with his children, and softball with the Crescent City Softball League, but that he can no longer play any sports and constantly takes Tylenol 8 for the pain.
For past medical expenses, we award $25,669; for future medical expenses we award $21,000; for general damages we award $250,000,00. Melder v. State, Through Dept. of Highways, 512 So.2d 546 (La.App. 3 Cir.1987); Morales v. Tetra Technologies, Inc., 608 So.2d 282 (La.App. 3 Cir.1992), writ den. 610 So.2d 818 (La.1993); Jaffarzad v. Jones Truck Lines, Inc., 561 So.2d 144 (La.App. 3 Cir.1990) writ den. 565 So.2d 450 (La.1990). Because there is no evidence of an employment history and Mr. Elpheage receives SSI and VA disability benefits, we make no award for past or future wage loss.
NOEL WASHINGTON, DENWARD BROUSSARD, and CHARLES WATKINS
None of the parties to this appeal have questioned the amount of damages awarded to Noel Washington, Denward Broussard and Charles Watkins. The Sewerage and Water Board of New Orleans in its brief disputed only the awards made to Beoh, Elpheage and Shorty. Therefore, we consider that the parties have abandoned any objections they may have concerning the ^amount of damages awarded to Washington, Broussard and Watkins. Rule 2-12.4 of the Uniform Rules of Louisiana Courts of Appeal.
RICHARD SHORTY
Richard Shorty testified that he was taken to a medical unit with a knee injury on the night of the accident. However, he could not recall the name of the medical unit and there is nothing in the record indicating that Mr. Shorty sought or received medical care immediately after the accident. Mr. Shorty testified that he was admitted to a hospital shortly after the accident in relation to his cocaine problem, but that upon referral by an attorney he sought treatment at the Canal Industrial Clinic a month after the accident because “he hurt his knee.” Dr. Arthur Blamphin testified that he examined Mr. Shorty nearly a month after the accident, finding that the abrasion on Mr. Shorty’s knee was healed, but that because it had not been properly cleaned and covered, it had developed an infection. Mr. Shortly did not return for treatment after the initial visit on June 1. 1987. He submits a bill from the Canal Industrial Medical Center charging $125 for the office visit and a $50 fee for a medical report.[7]
For past medical expenses and general damages, we award Richard Shortly $175 and $500.
DECREE
Pursuant to the foregoing de novo review, judgment is rendered against the Sewerage and Water Board of New Orleans and in favor of Robert Beoh in the sum of $78,-084.00; in favor of George Elpheage in the sum of | g$296,669.00; Richard Shorty in the sum of $675.00; Noel Washington in the sum of $5,000.00; Denward Broussard in the sum of $5,000.00; and Charles Watkins in the sum of $5202.89; together with interest and costs from date of judicial demand.
RENDERED ON REMAND FROM THE SUPREME COURT.

. It is not clear, however, what sports Mr. Beoh played before the injury or with what fre-quence. The only testimony elucidated on this point was "Oh yeah, I was involved in all kinds of different sports.”

. The record indicates that on May 12, 1987, Mr. Beoh saw Dr. Phillip V. Beilina and was apparently x-rayed at the Diagnostic & Imaging Center. Between May 12, 1987 and August 18, 1987, Mr. Beoh had weekly appointments with his physician, Dr. Seltzer. Mr. Beoh had one appointment with Dr. Seltzer in November 1987, one appointment in December 1987, three appointments in April 1990, and one appointment in August 1990. Between May 29, 1987 and July 22, 1987, Mr. Beoh received physical therapy at the New Orleans Physical Therapy Clinic.

. We note that Mr. Beoh testified that he did not know what amount he had lost in wages. Apparently, the wage loss claim is based on the number of weeks Mr. Beoh was absent from his duties as a bus driver, rather than any actual loss of wages due his injury.

. The record also indicates that Mr. Beoh was paid for the first two weeks of September 1987.

. This Court does not believe that a scarred ankle on a man who may frequently wear socks and/or long pants is of the same cosmetic significance as scars and/or deformities higher up on the leg where they are more in the line of sight, more likely to be exposed to view, and for both reasons more likely to be noticed. Therefore, we find that Suhre v. Jefferson Parish School Board, 601 So.2d 718 (La.App. 5 Cir.1992) is not persuasive.

.Dr. Nugent testified that the could only presume that the injury to the right knee was related to the accident of May 5, 1987; he admitted, however, there was no indication of medical problems with Mr. Elpheage's right knee prior to March 1988.

. We note that the medical report was not submitted into evidence.