754 So.2d 346 (2000)
Fay JOHNSON and Aubrey Johnson, Plaintiffs-Appellees,
v.
BROOKSHIRE GROCERY COMPANY, INC., Defendant-Appellant.
No. 32,770-CA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 2000.
*347 Gordon L. James, Mark J. Neal, Monroe, Counsel for Appellant.
Russell A. Woodard, Ruston, Counsel for Appellees.
Before WILLIAMS, CARAWAY and DREW, JJ.
*348 CARAWAY, J.
In this trip-and-fall case, the trial court found that a sunken area in the crosswalk at the entrance of a supermarket presented an unreasonable risk of harm which caused plaintiffs injuries. Plaintiff was not found to be at fault. Contesting the trial court's determinations of liability and quantum, the defendant appeals. For the reasons set forth below, the judgment of the district court is amended and affirmed.

Facts
On or about February 12, 1995, at approximately 9:00 a.m., Fay Johnson went to the Super One Food Store in West Monroe owned by defendant, Brookshire Grocery Company ("Brookshire"). After arriving at the store and parking her vehicle, she walked to the crosswalk in front of the entrance to the grocery store. The crosswalk crossed two lanes of traffic in front of the store and was marked with yellow stripes on the asphalt surface. Johnson, a regular shopper at Super One, testified that she looked to her right and left for oncoming automobiles upon entering the crosswalk. The next thing Johnson knew, her foot had just "gone down" and she was on the ground face down. Johnson admitted that she did not see the hole before she fell, but she described the hole, which she did not measure, as 3-4 inches deep. From the photographs and other testimony at trial, the indention in the crosswalk appears to be sufficiently wide enough for a person's foot to fit almost entirely into the hole.
A man came out of the store and helped Johnson up. He reported the accident to the store, and two female employees came outside and insisted that Johnson accompany them inside so they could "see about her injuries." Once inside of the store, Johnson attempted to complete her shopping, but realized that she was not able to because she was stunned, dazed and injured. Johnson checked out and after two employees helped her to her car, drove home.
Johnson went to the emergency room later that day for the injuries she received as a result of her fall. She received two stitches in her left hand and had her knees and her jaw area x-rayed, but no breaks or fractures were found. On the following day, Johnson saw Dr. Woods in West Monroe about her hand which had become red and swollen. Dr. Woods determined that her hand was infected, and treated it for about one month. His records indicate that her left knee had an abrasion and some swelling and her right knee had no abrasion but some swelling. Johnson testified that her knee pain resolved itself within one week of the accident.
Johnson also suffered jaw problems as a result of this fall. She was diagnosed with temporomandibular joint ("TMJ") injury and after various treatments she was fitted with a temporary splint which she still wears at night. Johnson's jaw continues to cause her problems.
Johnson's medical bills for these injuries totaled $1,703.33. She also damaged a watch and a ring in the fall which she had repaired for $58.05.
Brookshire introduced the trial deposition of David Chelette, an employee of Brookshire's maintenance and construction department, who repaired the parking lot in March 1995. Chelette described the condition of the crosswalk area as follows:
"I saw a crackdeviation and it wasto my opinion, it was about one inch deep by eight by twelve inches. I didn't see that it was a real big hazard, but somebody had slipped and fell, so I went to the lumber yard and got the material the asphalt mix in a sack, brought it back and fixed the hole."
Following the trial of this matter on November 16, 1998, the trial court ruled that the central issue in this case was whether the pothole in question presented an unreasonable risk of harm. It held that the pothole was in the middle of the crosswalk where Johnson was expected to be walking and was something clearly *349 "possessed of dangerous propensities" and desperately in need of repair. The court further noted that if the store management inspected the parking lot each day as the testimony indicated, the defendant knew or should have known of the pothole's existence and should have taken immediate action to fix it. The trial court awarded Johnson special damages in the amount of $1,761.38, and general damages of $7,500 for TMJ injuries, $4,000 for her hand-related injuries and $5,000 for her knee-related injuries. It is from this judgment that the defendant appeals.

Discussion
This accident occurred in 1995 prior to the legislative change which affected La. C.C. art. 2317 by the 1996 enactment of new Article 2317.1. Under the strict liability imposed by Article 2317 before 1996, the plaintiff must prove (a) that the thing which caused the damage was in the care (custody) of the defendant owner, (b) the existence of a defect or vice of the thing and (c) that his damage occurred through this defect or thing. See, Landry v. State, 495 So.2d 1284, 1287 (La.1986); Loescher v. Parr, 324 So.2d 441 (La.1975). The owner is absolved from his strict liability neither by his ignorance of the defect or vice, nor by circumstances that the defect could not easily be detected. Entrevia v. Hood, 427 So.2d 1146 (La.1983).
While Johnson argues that the strict liability of Article 2317 applies in this instance to govern Brookshire's care and custody of its parking lot and entrance, Brookshire asserts the application of La. R.S. 9:2800.6, dealing with a merchant's liability. This merchant liability statute was first enacted in 1988, Act 714. Following an amendment in 1990, wherein paragraph D was added, the merchant liability statute provided in 1995 at the time of this accident, in pertinent part as follows:
"A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. this duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable; and
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
* * *
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322 or 2695."
The merchant liability statute defines the merchant's liability for patrons using its aisles, passageways and floors. The statute provides a standard for negligence requiring proof of the merchant's actual or constructive notice of the unreasonable risk of harm. Nevertheless, the statute also states in paragraph D that the liability imposed on a merchant under La. C.C. art. 2317 (which was strict liability in 1995) was not affected by the statute. In view of the merchant liability statute's history with its enactment in 1988 to overrule the decision in McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987) dealing with slip and fall liability, we construe paragraph D to prevent the application of the statute in this case because of the defect in the premises which falls under the scrutiny of *350 Article 2317. This is not a slip and fall case. Unlike a slip and fall case, the coexistent possibility that the dangerous condition could be caused by a third party as opposed to the merchant is not present in this case. To the extent that the pothole in the crosswalk presented an unreasonable risk of harm as reviewed below, this case presents a defective thing in a state of disrepair for which the owner would be strictly liable. Landry v. State, supra. This determination of the applicable standard of strict liability precludes the necessity of further discussion concerning Brookshire's assigned error regarding constructive notice of the pothole and its failure to exercise reasonable care.

Unreasonable Risk of Harm
In this matter, the trial court determined that the central question it had to address was whether the pothole constituted an unreasonable risk of harm. Applying the unreasonable risk of harm analysis in a recent similar case,[1] the Louisiana Supreme Court has stated:
"It is common for the surfaces of streets, sidewalks, and parking lots to be irregular. It is not the duty of the party having garde of the same to eliminate all variations in elevations existing along the countless cracks, seams, joints, and curbs. These surfaces are not required to be smooth and lacking in deviations, and indeed, such a requirement would be impossible to meet. Rather, a party may only be held liable for those defects which present an unreasonable risk of harm."
Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362, 363.
The strict liability imposed by Article 2317 requires the plaintiff to prove that the vice or defect of the thing is a condition which poses an unreasonable risk of harm to others. A determination of whether a thing presents an unreasonable risk of harm should be made "in light of all relevant moral, economic, and social consideration." Celestine v. Union Oil Co. of California, 652 So.2d 1299 (La. 1995), quoting Entrevia v. Hood, 427 So.2d 1146 (La.1983). The risk-utility balancing test weighs factors such as gravity and risk of harm, individual and societal rights and obligations, and the social utility involved. Boyle v. Board of Supervisors, LSU, 96-1158 (La.1/14/97), 685 So.2d 1080.
The determination that a defect presents an unreasonable risk of harm predominantly encompasses an abundance of factual findings, which differ greatly from case to case. The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically. Landry v. State, supra. Consequently, the findings of the jury or trial court should be afforded deference and thus, the ultimate determination of unreasonable risk of harm is subject to review under the manifest error standard. A reviewing court may only disturb the lower court's holding upon a finding that the trier of fact was clearly wrong or manifestly erroneous. Reed, supra; Lewis v. State, Through DOTD, 94-2370 (La.4/21/95), 654 So.2d 311; Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993); Lebeaux v. Newman Ford, Inc., 28,609 (La.App.2d Cir.9/25/96), 680 So.2d 1291.
In the instant case, the plaintiff tripped and fell in a hole which was located in the crosswalk in front of the store. The actual size of the hole or indention is in question. The plaintiff estimated the hole as 3-4 inches deep; her daughter estimated the hole as 3-6 inches deep. David Chelette, the defendant's maintenance man, estimated that the crack or deviation was about *351 one inch deep by eight by twelve inches wide.
It was undisputed that the hole was located in the crosswalk which was situated directly in front of the store where the patrons were directed to cross the roadway to the store's entrance. Additionally, unlike the relatively small expansion joint cracks which were addressed by our supreme court in the Boyle and Reed cases, supra, the small sunken area in this case, which extended in width to the length of a person's foot, was clearly an obstacle which could cause serious injury. The effort required of Brookshire to identify this defect and repair it was minimal.
The trial court apparently found the testimony of Johnson and her daughter persuasive and determined that the hole in the crosswalk presented an unreasonable risk of harm to Johnson, as well as to others that shopped at the Super One Food Store. Our review of the testimony and the evidence leads us to the conclusion that the trial court was not manifestly erroneous in its determination that the condition in the parking lot constituted an unreasonable risk of harm.

Comparative Fault
Brookshire argues that the trial court erred in finding Johnson free from fault and in not applying comparative fault to reduce its liability. When we examined the facts concerning Johnson's conduct, the size and location of the pothole, and all other circumstances, we find that the trial court could reasonably conclude that Johnson was not at fault.
At the time of the accident, Johnson was 72-years-old and was a frequent shopper at Super One Food Store. She stated that she was carrying only her purse, that she had on rubber soled shoes, and that she was not in a hurry.
The location in the parking lot of the accident is a significant factor. While surfaces of parking lots are irregular requiring a patron to be on the look out, this particular sunken area was in the crossing lane where one's peripheral vision toward the surface would pickup the yellow markings as an assurance of an appropriate walkway area across the traffic zone in front of the store. The primary use of one's vision in beginning into the crossway where this accident occurred would be to look for oncoming vehicles. At the same time, the size, shape and coloration of the sunken area, and the level area extending beyond the sunken area which appears from the photographs to be a previously patched area or stained marking on the pavement, could easily cause a pedestrian to not recognize that a significant indention was present. Accordingly, after review of all the factors of this accident, we find the trial court was not manifestly in error and could reasonably conclude that Johnson exercised reasonable care under the circumstances.

Quantum
General damages involve mental or physical pain and suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitively measured in monetary terms. De Los Reyes v. USAA Cas. Ins. Co., 28,491 (La. App.2d Cir.6/26/96), 677 So.2d 668; Keeth v. State Through Dept. of Public Safety and Transportation, 618 So.2d 1154 (La. App. 2d Cir.1993), writ denied, 619 So.2d 563 (La.1993); Anderson v. Bennett Wood Fabricators, 571 So.2d 780 (La.App. 2d Cir.1990), writ denied, 573 So.2d 1135 (La. 1991).
The discretion vested in the trier of fact is vast; an appellate court should rarely disturb an award of general damages. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. den. sub. nom., 510 U.S. *352 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
Brookshire complains in its final assignment of error about the amount of quantum awarded to Johnson for her knee, $5,000, and hand injuries, $4,000. We find that the record supports an award of $4,000 for Johnson's hand injury. While it was a minor cut which required only two sutures to close, the laceration became infected. As a result, Johnson had to seek additional medical treatment with Dr. Woods for approximately one month to treat the injury and the infection. An award of $4,000 for this injury was not an abuse of discretion by the trial court.
However, we do find the award of 5,000 for Johnson's knee injuries to be an abuse of discretion. Johnson had her knees x-rayed at the emergency room on the day of the fall. No breaks or fractures were noted and she received no further medical treatment of any kind for any knee injuries she received from this fall. Johnson did suffer from some redness and abrasions which she testified resolved within one week following the accident.
Therefore, since we have found that the trial court has abused its discretion, we must lower the award to highest point which is reasonably within the discretion of the trial court. Accordingly, we lower the award to $2,000.[2]

Conclusion
For the reasons set forth above, the judgment of the trial court is hereby amended and affirmed. Costs are assessed to appellant.
AMENDED AND AFFIRMED.
NOTES
[1] The test for unreasonable risk of harm applies in a strict liability case and a negligence case, including a case controlled by La. R.S. 9:2800.6. In the case of Reed v. Wal-Mart Stores, Inc. cited herein, the court was not required to address whether the alleged defective parking lot presented a case under La. R.S. 9:2800.6 or La. C.C. art. 2317 because the parking lot was found not to present an unreasonable risk of harm.
[2] Jefferson v. Costanza, 628 So.2d 1158 (La. App. 2d Cir.1993) (Plaintiff had to undergo surgery to remove stick pin from behind knee capaward of $4,000); Miller v. Mahfouz, 563 So.2d 1223 (La.App. 1st Cir.1990) (Plaintiff suffered mild crepitation, tenderness and decreased mobility in knee which resolved with treatment within one monthaward of $1,000); Beoh v. Watkins, 93-1394 (La.App. 4th Cir.11/30/94), 646 So.2d 513 (Plaintiff suffered knee abrasion which resolved itself within one monthaward of $500).