DREW, J.
Bruce Sanders- and Deborah Sanders appeal a judgment dismissing their claim for damages sustained when Bruce Sanders (“Mr. Sanders”) slipped on a patch of ice.
We affirm.
FACTS
Bruce Sanders was employed as a maintenance man for Community Bridges, which managed group homes for mentally-retarded individuals in the Ruston area. On the morning of January 2, 2001, Mr. Sanders was called out to one of the homes to repair a clogged drain line. As he had done many times in the past, Mr. Sanders proceeded to Backus True Value Hardware in Ruston in order to rent “snakes” with which to unclog the line.
Mr. Sanders arrived at Backus True Value, entered the store, and proceeded as usual to the rental desk to rent the snakes. He was waited on by store clerk Jason Carpenter. After filling out the necessary paperwork, Mr. Sanders drove behind the store to the loading dock where the snakes were kept, which was the normal procedure.
A snow and ice storm had hit the region on New Year’s Eve and New Year’s Day of 2001. Mr. Sanders estimated that the area received six inches of snow. Mr. Sanders believed that' he complained about the conditions behind the store at this time, but he did not know to whom he complained. Carpenter stated that Mr. Sanders did not complain about the conditions outside the store when he was directed to the loading dock.
The snakes were kept- near the loading dock because they were covered in filth due to the nature of their use. Smaller snakes in selfijcontained2 units were kept inside the store. Carpenter described the snakes as being limber and not very heavy. The snakes were essentially spring steel, each snake measuring about ten feet in length and an inch and- a quarter in diameter, with a weight of approximately eight pounds. The snakes were the only items stored on the loading dock for customers to pick up. Except for .the occasional scaffolding or large ladder, all other rental items were picked up in the store.
-Upon arriving behind the store, Mr. Sanders unlocked his van and then helped Carpenter load the snakes into the van. Mr. Sanders testified that he was very afraid driving his van to the area behind the store because there was thick ice there. Mr. Sanders testified that he, Carpenter, and another person struggled to load the snakes because of the icy conditions. He also stated that he faced difficulty when he drove away. He recalled that it took him at least ten minutes to leave the area behind the store because he was “backing up and going very slowly” to keep from sliding out of control, as well as stopping at times to survey the situation. Mr! Sanders was fearful that his van would slide off the loading ramp and into a ditch running alongside the ramp.
Carpenter’s testimony on what occurred was different. He stated that he observed Mr. Sanders back the van up the loading ramp without difficulty to within eight to ten feet of the loading dock. Carpenter believed this area of the ramp was devoid of ice and snow. He also testified that he witnessed Mr. Sanders drive away and *1179 that he did not see Mr. Sanders’ van | flipping or sliding or doing anything that made him think Mr. Sanders was having difficulty driving the van.
A few hours later Mr. Sanders returned to rent additional lengths of snake in order to complete his task. He met with Carpenter inside the store, then was directed by Carpenter to go to the loading ramp. Mr. Sanders stated that he told Carpenter that he would not drive to the loading dock this time because the conditions were too treacherous and slippery. Mr. Sanders added that he told Carpenter that he would park at the bottom of the ramp where the sun was hitting, and that Carpenter would have to bring the snakes to him. However, Carpenter testified that Mr. Sanders did not complain at that time about the conditions behind the store. We also note Mr. Sanders’ deposition testimony that he spoke with a greeter when entering the store the second time and told him that he was not going to pull his van to the back, and that he did not see Carpenter in the store the second time.
Mr. Sanders parked his van in a driveway near the loading dock behind the Dollar General Store next to Backus True Value. The van faced Reynolds Drive, which runs parallel to the rear of the stores. It was a spot that Carpenter estimated was about 200 feet from the True Value loading dock.[1] Mr, Sanders testified that the entire area behind the Dollar General store was icy, but he chose this particular spot as he considered it to be the safest.
14As Mr. Sanders exited his van, he asked or motioned for Carpenter to drag the snakes to him. Carpenter stated that Mr. Sanders also told him “there was too much ice back there.” Carpenter recalled that when Mr. Sanders turned to go around the van in order to unlock the rear doors, he slipped and the back of his head struck the concrete. Mr. Sanders testified that he slipped on a thin patch of ice as he was telling Carpenter to come to him.
Mr. Sanders did not lose consciousness and was able to pick himself up off the ground. Even though his head was hurting, the snakes were loaded into the van and Mr. Sanders left to complete his job. When he returned to True Value for the third time, he parked in a spot near where he fell. This time he remained in the van as the snakes were unloaded.
The impact caused a shunt in Mr. Sanders’ brain to malfunction. When Mr. Sanders was 19 years old, doctors discovered that he had hydrocephalus as well as a cyst on his brain. The shunt malfunction caused an increase in intra-cranial pressure, which probably caused damage to Mr. Sanders’ optic nerve and further limited his vision. Mr. Sanders already had right-side homonymous hemianopia consistent with his chronic hydrocephalus. Mr. Sanders noticed that he began having blurry vision to the right when he was 13 years old, and he gradually lost his vision to the right. Mr. Sanders also stated that beginning when he was a teenager, he would sometimes experience a “spider web” effect across his full field of vision upon exerting himself. After the fall at issue, Mr. Sanders could only see in the left upper | ^quadrant of his field of vision and a small area straddling the line between the upper and lower quadrants on the left side.
Mr. and Mrs. Sanders filed suit alleging that Backus True Value was negligent in: (i) requiring Bruce Sanders to deliver the returned rental equipment to the rear of the store where the ice conditions were hazardous; (ii) failing to maintain the loading area in the rear premises in a safe condition; (iii) failing to provide a safe *1180 alternative delivery location for réturned rental equipment; and (iv) failing to provide an alternative delivery procedure,- including but not limited to inside pickup and delivery of rental equipment.
■A jury trial was held in this matter over three days in April and May of 2003. The jury reached a verdict in which it answered “No” to the question of whether it found “by a preponderance of the evidence that Backus True Value Hardware was negligent and that its negligence was a legal cause of the accident of January 2, 2001.” Mr. and Mrs. Sanders appealed.
DISCUSSION
Appellants argue on appeal that the jury erred in determining that Backus True Value was not at fault for the accident.
A court of appeal may not set aside a jury’s finding of fact in the absence of. “manifest error” or unless it is “clearly wrong.” Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). To reverse a factfinder’s determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and that the record | ^establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120 (La.1987).
A reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court’s finding. The reviewing court must review the record in its entirety to determine whether the trial court’s finding was clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993).
Where there is conflict in the testimony, reasonable evaluations of credibility and, reasonable inferences, of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, supra. Wfiiere there are two permissible views of the evidence, the factfinder’s choice cannot be manifestly erroneous or clearly wrong. Stobart, supra.
■ When factual findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard of review demands great deference to the trier of fact’s findings, because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Rosell v. ESCO, supra.
Mr. and Mrs. Sanders first argue that Backus’ liability is based upon La. R.S. 9:2800.6, which provides:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe ' condition. This duty includes a treasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that, risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
*1181 (3) The merchant failed to exercise reasonable care. In determining reasonable 'care, the absence of a written or verbal uniform cleanup' or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) “Constructive, notice” means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
(2) “Merchant” means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.
Appellants assert that once a prima facie case had been established that a premises hazard existed, the burden of proof shifted to Backus True RValue to show it used reasonable care to avoid this hazard. In support of its position, appellants cite Stepherson v. Wal-Mart Stores, Inc., 34,547 (La.App.2d Cir.04/04/01), 785 So.2d 950; Wright v. Wal-Mart Stores, Inc., 31,764 (La.App.2d Cir.5/5/99), 737 So.2d 153; and Edwards v. K & B, Inc., 26,002 (La.App.2d Cir.8/17/94), 641 So.2d 1040. However, we note that each of those cases involved falling merchandise or objects in the store, which are governed by paragraph (A) of La. R.S. 9:2800.6. Falls on a store’s premises are governed by paragraph (B). Stepherson v. Wal-Mart Stores, Inc., supra. A plaintiff is required to prove each element of his cause of action under La. R.S. 9:2800.6(B). White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081.
Appellants further contend that Backus True Value is liable under La. C.C. art. 2317.1, which states:
The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care. Nothing in this Article shall preclude the court from the application of the doctrine of res ipsa loquitur in an appropriate case.
The evidence established that Backus True Value acted reasonably under the circumstances. Reasonable measures were taken by Backus True Value to lessen the chance of injury in the area where it- intended its customers to pick up snakes. Floor manager Ray DeOliviera testified that rental section employees had removed the ice and snow from the steps and area adjacent to the loading dock by scraping, shoveling, and sweeping it |9off. He added that they did this to make the area as safe as possible for customers who would be in that area, although he conceded that the area where Mr. Sanders stopped the first time had not been cleared. Carpenter testified that store employees had been scooping up the ice in an area closer to Backus True Value’s loading dock, and were working their way toward the Dollar General side before Mr. *1182 Sanders fell. Carpenter believed that the area where Mr. Sanders parked his van the first time was without ice and snow. However, store owner and manager Joe Backus, II, testified that more areas of the loading ramp were covered by snow and ice than were not. Although icy conditions existed at the Backus True Value loading dock where Mr. Sanders was directed to go, neither he nor Carpenter slipped or fell when loading the snakes on Mr. Sanders’ first trip that morning.
Backus True Value typically stocked about five bags of ice melt at a time. Not one bag was sold during this winter storm. DeOliviera estimated that if the ice melt had been used by Backus True Value employees, it would have treated less than half of the area behind the store. It would have been used behind the hardware store and not where Mr. Sanders actually fell.
It is- asserted that Backus True Value should have delivered the snakes to Mr. Sanders in front of the store, which was clear of ice and snow. Carpenter stated that he would have done this had Mr. Sanders made this request. Backus testified that if Mr. Sanders had concerns about going behind the store and wanted the snakes brought to him, his employees would have addressed that concern. Mr. Sanders related that nobody |inoffered to bring the snakes through the store, and that he would have accepted if that had been offered. However, Mr. Sanders admitted that he never asked for the snakes to be brought to him in front of the store. Backus True Value also had a delivery service for an additional fee.
In any event, when Mr. Sanders returned to pick up additional snakes, he parked in an area that was at least 200 feet away from where he would normally park. This location was not even behind Backus True Value, but behind the Dollar General Store. Backus owned the building that houses the hardware store and the adjoining Dollar General.- However, the operators of Dollar General lease the space from him, and it is a separate and independent business. Mr. Sanders was familiar with the normal procedure of picking up the snakes as he had rented snakes as many as 21 times in prior years.
The owner of a commercial establishment is not ,the insurer of the safety of his patrons, and a store owner is not liable every time an accident occurs. Harrison v. Horseshoe Entertainment, 36,294 (La.App.2d Cir.8/14/02), 823 So.2d 1124. Clearly, Backus True Value could not have expected that its snake rental customers would park in the location where Mr. Sanders fell. Mr. Sanders admitted that nobody directed him to that spot, and he chose it because it was in the sunlight. Carpenter could not recall any customer stopping where Mr. Sanders stopped to receive the snakes.
Mr. Sanders was well aware of the conditions .on the ground. He agreed that his task was somewhat of an.emergency because two out of the Inthree bathrooms were not working in a home with eight residents and two staff members. Mr. Sanders admitted that, nothing prevented him from unlocking the van’s doors after leaving the store and before he drove to the back the second time. Mr, Sanders could have remained safely in the van while the snakes were loaded.
Based on our review of this record, we cannot conclude that the jury was clearly wrong in finding that Backus True Value was not at fault for the accident.
Appellants cite Keller v. Odin Management, Inc., 33,300 (La.App.2d Cir.5/10/00), 762 So.2d 657, writ denied, 2000-2144, 2152 (La.10/6/00), 771 So.2d 81, for support. Keller fell on an icy sidewalk outside a mall where she worked. The mall had earlier placed rock salt on the sidewalks, and then subsequently closed the *1183 mall. This court found that the mall had acted reasonably and did not breach its duty of care to Keller. Appellants argue that in contrast, Backus True Value did not spread salt and remained open for business. Appellants also submit Johnson v. Brookshire Grocery Company, Inc., 32,770 (La.App.2d Cir.3/1/00), 754 So.2d 346, writ denied, 2000-0938 (La.5/26/00), 762 So.2d 1107, in support of its argument. Johnson fell in a sunken area in the crosswalk between the store entrance and the parking lot. These two cases are readily distinguished from the case at hand because both Keller and Johnson were where they were expected to be. Backus True Value customers were expected to retrieve the snakes at the Backus True Value loading dock, not 200 feet away behind another store.
haDECREE
At appellants’ costs, the judgment is AFFIRMED.

. Joe Backus, II, measured the distance as being about 225 feet.