PITMAN, J.
11 Plaintiff Jerome Waddles appeals the trial court’s ruling in favor 'of Defendant Brookshire Grocery ' Company, d/b/a Brookshire’s. For the following reasons, we affirm.

FACTS

On October 17, 2012,, Plaintiff filed a petition for personal injuries, alleging that, on November 29, 2011, he was injured on premises in the care, custody and control of Defendant. He stated that, while walking in the parking lot he “suddenly and without warning, ... was caused to fall by an uneven section of asphalt and/or concrete, which was unreasonably dangerous,” resulting in “severe, painful and disabling injuries” to his hand, shoulder, knees, hip, leg, ribs, neck, ankle and back. He alleged that Defendant had actual and/or constructive knowledge of, the presence of the unreasonably dangerous area prior to the time he was injured and, therefore, is guilty of fault, breach of duties and negligence for failing to remedy a hazardous condition on its premises or warn of its *774 presence. He further alleged that he is completely free from any negligence, fault or breach of duties that contributed to his injuries and damages.[1]
On November 9, 2012, Defendant filed an answer and affirmative defenses, denying Plaintiffs allegations and arguing that the accident and injuries were caused by the fault of Plaintiff and/or third persons over whom |¾⅛ has no supervision or control. It asserted all rights of contribution, indemnity and setoff available under Louisiana law.
A bench trial was held on September 5, 2014. Donald Ray Robinson testified that, on the morning of November 29, 2011, he rode with Plaintiff to Defendant’s grocery store in Bossier City and that Plaintiff parked his vehicle in the Defendant’s parking lot. He noted that, after they exited the vehicle and began walking toward the store, Plaintiff suddenly fell forward. He stated that it was a “hard fall” and Plaintiffs knees hit the ground and his hands went to the ground in an attempt to catch himself. He helped Plaintiff up off the ground, and they proceeded into the store, although they did not make any purchases. Mr, Robinson testified that, when they walked back to the vehicle, they noticed a “slight crack or something that was in the concrete” in the area where Plaintiff fell. He stated that it appeared Plaintiffs fall was caused when his foot snagged on a ledge in the concrete. He also noted that stripes were painted on the concrete near the crack, which was located in the walkway from the parking lot to the store. On cross-examination, Mr. Robinson testified that they did not report Plaintiffs fall to any store employees.
Plaintiff testified that, on the morning of November 29, 2011, he and Mr. Robinson drove to Defendant’s store to purchase chicken. He parked his vehicle in the parking lot, exited the vehicle and slipped and fell while walking toward the store. He further testified that he “took a hard fall” because of a hole and a crack in the parking lot. He stated that his toe jammed into a broken section of the parking lot and he fell down. Plaintiff lsfurther stated that he tried to break his fall with his right hand, that he landed on his left knee, right hand and right side and that the wind was knocked out of him. He noted that he fell in an area painted with stripes on the concrete used as a crosswalk from the parking lot to the door of the store. He testified that Mr. Robinson helped him up off the ground, and they then proceeded into the store. After exiting the store, they examined the area where he fell, noting that the concrete was uneven and cracked. He stated that he did not report his fall to anyone in the store because he did not realize the seriousness of his injuries. Plaintiff testified that, once he arrived back home, he was in excruciating pain and soaked his hand and knee in Epsom salt to remove the blood. He returned to the store two days later to report the incident. Plaintiff stated that he spoke to the store manager, Bill High-tower, who completed an accident report. He also testified that he later returned to the location of his fall and noticed that new concrete had been poured in the area where he fell. Plaintiff further stated that *775 he would not have fallen and injured himself but for the hole or crack in the uneven section of parking lot. He testified that he did eventually seek medical treatment from Dr. Carter Boyd at Boyd Family Medicine. He also saw Dr. Nancy Germany at Shreveport Doctor’s Rehab for treatment of his right hand, ribs, hip, shoulder and lower back. Dr. Germany treated him for four to six months and prescribed pain medication, muscle relaxers and physical therapy for his injuries. He stated that his pain returned when he stopped taking the pain medication, so he went back to Dr. Germany. He began to feel better after resuming treatment and was discharged on May 22, 2014. | ¿Plaintiff also testified that he had a work-related accident in 2004 when he fell down some stairs and injured his lower back, left hip, left ankle and left shoulder. He noted that he had experienced no problems with his neck, right shoulder, right side, right hip or right hand prior to the November 29, 2011, fall.
On cross-examination, Plaintiff testified that he has not worked since his fall at work in 2004. He received workers’ compensation benefits until April 2013, when he reached a settlement that stopped the benefits. He stated that he applied for social security disability twice based on the November 29, 2011, fall, but both applications were denied. He noted that Dr. Germany’s reports from 2012 incorrectly state that his trapezius strain and rib and chest pain had completely resolved, as Dr. Germany did not believe he was truthful about his levels of pain. Plaintiff testified that he was also involved in a motor vehicle accident on October 3, 2013, and had sought medical treatment and asserted a claim for injuries he sustained in that accident, which matter was ongoing.
Plaintiff also submitted into evidence the deposition of Mr. Hightower, who testified that he worked as an assistant store manager for Defendant at the Barksdale location in Bossier City from approximately July 2011 until July 2012. He stated that, during this period, he could not recall any work being done to the parking lot or the crosswalk in front of the store. Mr. High-tower recalled Plaintiff reporting an incident, whereupon he completed an accident report and took photographs of the area where Plaintiff stated he fell. He further testified that he viewed video from the | ¿store's cameras to see if Plaintiffs fall was recorded, but that area of the parking was not covered by the cameras. He noted that Defendant’s employees take groceries back and forth from the store to the parking lot many times a day and that numerous customers walk through the parking lot daily, but no other accidents in that area had ever been reported. He further stated that Defendant has a company policy to eliminate all tripping hazards in the store and parking lot.
Defendant submitted into evidence two photographs of the parking lot taken by Mr. Hightower, medical records from the physicians who treated Plaintiff following his various accidents and Dr. Germany’s deposition. In her deposition, Dr. Germany, a primary care physician, testified about her treatment of Plaintiff, noting that he complained of neck pain, left knee pain, right shoulder pain, right hand pain, right hip pain and left leg pain. She stated that, on his first visit, she took X-rays of his right shoulder, right hand, left knee and right rib, which were all within the normal limits of human skeletal anatomy. She detailed Plaintiffs improvement over several months of treatment and noted that he was discharged on May 22, 2012.
On November 6, 2014, the trial court filed its opinion. It noted that Louisiana law does not obligate a landowner with a duty to eliminate all variation in the eleva *776 tions existing along cracks, seams and joints in concrete parking lots and other concrete surfaces. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362. The trial court further stated that, where the concrete. deviation is between one and. three inches and there | Ris a complete absence of prior complaints, the landowner cannot be liable because the condition is not an unreasonable risk of harm. Chambers v. Village of Moreauville, 11-898 (La.1/24/12), 85 So.3d 593. It found that Defendant did not have actual or constructive notice of the uneven section of concrete in its parking lot which caused Plaintiff to fall. Because no evidence was presented to rebut Defendant’s assertion that the concrete deviation in question was not greater than one to three inches in depth, the trial court found that the concrete deviation did not pose an unreasonable risk of harm. It also noted that no evidence was presented at trial of prior accidents or complaints' about the area where Plaintiff fell being reported to Defendant’s employees, so Defendant had no notice or knowledge of the deviation. The trial court determined that Defendant exercised reasonable care under the, circumstances and is not liable to Plaintiff, assessing all costs to Plaintiff.
Plaintiff now appeals.

DISCUSSION

Merchant Liability Burden of Proof

In his fourth assignment of error, Plaintiff argues ’ that the trial court erred in finding that he did not meet his burden of proof and that it should have found that the concrete defect in the crosswalk was unreasonably dangerous, that Defendant had actual and/or constructive knowledge of the defect and that it failed to act reasonably with regard to the defect. Plaintiff contends that the defect in the concrete was an unreasonably dangerous condition because the cracked,, uneven’ and broken portion of concrete was 17significant enough to cause him to fall. He argues that the crosswalk should be a “safe haven” for customers when entering and exiting the store, so the location of the crack in that area makes it unreasonably dangerous. Plaintiff asserts that Defendant had actual and/or constructive knowledge of the defect because. Mr. Hightower stated in his deposition that the defect in the parking lot had probably been there for awhile and customers and employees had walked through that area. • Plaintiff further contends that Defendant failed to act reasonably with regard to the defect because it did not adhere to its policy to remedy all tripping hazards in its store and parking lot. He asserts that, by violating its own policies, Defendant acted unreasonably as a matter of law. He also notes that Defendant did not do anything to remedy or warn of the defect in the concrete of the parking lot. Therefore, Plaintiff contends that he proved all the elements required in La. R.S. 9:2800.6(B). He also states that he was not. comparatively at fault because his eyes were drawn to the yellow stripes painted in the crosswalk and not.to the defect and that he was also watching approaching traffic and customers.
Defendant argues that Plaintiff failed to meet his burden of proof as set forth in La. R.S. 9:2800.6(B). It contends that, even though Plaintiff refers to the concrete deviation as “sunken,” “broken” and “uneven,” these are just his descriptions and are not evidence. Defendant argues that the deviation at issue is a minor, slight and normally occurring crack and further points out that there is nothing in the record of the measured height of the variance of the concrete deviation at issue. It also argues that neither |sMr. Robinson or Plaintiff knew of anyone else ever falling *777 where the incident occurred and that Mr. Hightower stated that no one had ever fallen or complained about the condition of the concrete. . Defendant contends that it did- not have notice of any- dangerous condition in the parking lot.
La. R.S. 9:2800.6 sets forth a plaintiffs burden of proof in claims against merchants and states:
A. A merchant owes a duty to persons, who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully-on the merchant’s premises for damages, as a result of an injury, death, or -loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition -presented' an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the. condition which caused the damage, prior to the occurrence.
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) “Constructive notice” means the. claimant- has proven that the" condition-existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
|fl(2) “Merchant” means one whose business is to sell-goods, foods, wares, or merchandise at á fixed place of business. For purpose's of this Section; a merchant ' includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.
D.Nothing herein shall affect any lia- . bility which a merchant may have under Civil Code Arts’ 660, 667, 669, 2317, 2322, or 2696.
" The manifest error standard of review is the proper standard in cases involving findings of unreasonable risks of harm or unreasonably dangerous defects. Reed v. Wal-Mart Stores, Inc., supra. In Reed, the Louisiana Supreme Court explained:
Because- a determination that a defect presepts an unreasonable risk. of harm predominantly encompasses an abundance .of,factual findings, which differ greatly from case to case,.followed by an application of those facts to.a less-than-scientific standard, a reviewing court is in no better position to make the determination than the jury or trial court. Consequently, the findings of the jury or trial court should be afforded deference and we therefore, hold that the ultimate determination of unreasonable risk .of-harm is' subject- to review under the manifest error standard. A reviewing court may only disturb the lower court’s *778 holding upon a finding that the trier of fact was clearly wrong or manifestly erroneous.
In the case sub judice, the evidence presented at trial is insufficient to meet Plaintiffs burden of proof pursuant to La. R.S. 9:2800.6(B). He did not prove that the condition presented an unreasonable risk of harm and that the risk of harm was reasonably foreseeable. The size and depth of the crack in the concrete was not introduced, and this information is not dis-cernable from the photographs of the crack. At trial, Mr. Robinson and Plaintiff testified that Plaintiff fell in Defendant’s parking lot, that they then entered the store to shop and that, when walking back to the vehicle, they |inexamined the area where Plaintiff fell. Mr. Robinson stated that he noticed a “slight crack or something that was in the concrete,” that one part of the crack was “up a little higher” and that Plaintiffs foot snagged on the ledge, which caused him to fall. Plaintiff described the area where he fell as having a hole and a crack and that his toe jammed in the broken section, causing him to fall. The descriptions of the condition and the lack of data regarding the condition fail to prove that the condition presented an unreasonable risk of harm. Plaintiff also failed to prove that Defendant had actual or constructive knowledge of the condition. Mr. Hightower’s testimony demonstrates that Defendant did not have actual notice of the condition because he testified that no one other than Plaintiff ever reported an accident in the area where Plaintiff fell, even though this is an area used by numerous customers and employees each day. The evidence presented at trial does not prove that Defendant had constructive notice of the condition. Plaintiff did not prove that the condition in the parking lot crosswalk existed for such a period of time that it would have been discovered if Defendant had exercised reasonable care. Although employees use the crosswalk daily, no evidence was introduced that any employee knew or should have known of the condition. Therefore, the trial court was not manifestly erroneous in its determination that Plaintiff failed to meet his burden of proof pursuant to La. R.S. 9:2800.6.
Accordingly, this assignment of error lacks merit.
| ^Evidence of Prior Accidents
In his first assignment of error, Plaintiff argues that the trial court erred as a matter of law by finding that Defendant was not liable because there was no evidence of any prior accidents in the area of the parking lot where he fell. He contends that there is not a statutory or jurisprudential requirement in a premises liability case that the defect or unreasonably dangerous condition in question must have caused a previous accident. He asserts that there are a multitude of premises liability cases in which the plaintiff recovered damages without showing that a prior accident occurred caused by the unreasonably dangerous condition.
Although Plaintiff is correct that La. R.S. 9:2800.6(B) does not require that the condition in question caused a previous accident, the trial court did not err in considering the lack of previous accidents when analyzing whether the condition presented an unreasonable risk of harm and whether Defendant had knowledge of the condition. See, e.g., Burnes v. Caddo Parish Sch. Bd., 49,181 (La.App.2d Cir.6/25/14), 146 So.3d 270 (where the trial court considered that the existence of one prior accident did not create an unreasonable risk of harm), and Reed v. Wal-Mart Stores, Inc., supra (where the trial court considered the absence of previous accidents when analyzing whether a defect presented an unreasonable risk of harm).
*779 Accordingly, this assignment of error lacks merit.

Depth of Defect

In his second assignment of error, Plaintiff argues that the trial court erred as a matter of law by finding that a concrete crack, hole or other defect 11⅞⅛ not unreasonably dangerous unless it is larger than one-to-three inches in depth. He contends that the trial court’s reliance on Chambers v. Village of Moreauville, supra, is misplaced because the Chambers court determined whether a 1.25 inch to 1.5 inch deviation in a city sidewalk was unreasonably dangerous. Plaintiff differentiates municipality sidewalk cases from merchant crosswalk eases and argues that there is a lower standard of care in cases of city sidewalks located “in the middle of nowhere” when compared with a crosswalk located at the entrance to the store where customers are encouraged to walk. He also contends that there is a low financial burden on a merchant to maintain a crosswalk in contrast with the extremely high burden for maintaining hundreds of miles of city sidewalks. Plaintiff also notes that there is no mention of a one-to-three inch deviation in the current case.
Defendant contends that the Chambers, supra, case is applicable because the Louisiana Supreme Court determined that the risk of injury was not great because the deviation was relatively small, i.e., 1.5 inches. Defendant also notes that the court in Reed v. Wal-Mart Stores, Inc., supra, found that a 0.25-to-0.5 inch concrete deviation was minimal and was not hazardous because, even though the deviation was in a high-traffic area in the parking lot, the claim at issue was the first reported incident. Defendant notes that, in the instant case, the only suggestion that the concrete deviation was anything other than a minor crack or irregularity has come from Plaintiff and not from the evidence presented at trial.
| ^Although Plaintiff is correct that a crack is not per se unreasonably dangerous unless it is more than one-to-three inches in depth, the trial court did not err in considering the depth of the crack when determining whether the condition presented an unreasonable risk of harm. Plaintiff did not present any evidence at trial of a measurement.of the deviation in. the concrete. The only evidence available for the trial court to consider was the testimony of Mr. Robinson and Plaintiff and two photographs taken of the condition. This lack of evidence supports the trial court’s finding that Plaintiff failed to meet his burden of proof.
Accordingly, this assignment of error lacks merit.

Heightened Standard of Care

In his third assignment of error, Plaintiff argues that the trial court erred as a matter of law by failing to apply a heightened standard of care because the defect in question was located in the crosswalk of Defendant’s parking lot. He contends that the trial court should have considered Johnson v. Brookshire Grocery Co., Inc., 32,770 (La.App.2d Cir.3/1/00), 754 So.2d 346, writ denied, 0.0-0938 (La.5/26/00), 762 So.2d 1107, in which the court stated that a heightened* standard of care applied when the defect in question was located in the crosswalk of a parking lot where customers were expected to walk.
This court in Johnson, supra, discussed La. R.S. 9:2800(D), which states—“Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.” This court explained:
j uThe merchant liability statute 'defines the merchant’s liability for patrons using its aisles, passageways and floors. The *780 statute provides a standard for negligence requiring proof of the merchant’s actual or constructive notice of the unreasonable risk of harm. Nevertheless, the statute also states in paragraph D that the liability imposed on a merchant under La. C.C. art. 2317 (which was strict liability in 1995) was not affected by the statute. In view of the merchant liability statute’s history with its enactment in 1988 to overrule the decision in McCardie v. Wal-Mart Stores, Inc., 511 So.2d 1134 (La.1987) dealing with slip and fall liability, we construe paragraph D to prevent, the application of the statute in this case because of the defect in the premises which falls under the scrutiny of Article 2317. This is not a slip and fall case. Unlike a slip and fall case, the coexistent possibility that the dangerous condition could be caused by a third party as opposed to the merchant is not present in this case. To the extent that the pothole in the crosswalk presented an unreasonable risk of harm as reviewed below, this case presents a defective thing in a state of disrepair for which the owner would be strictly liable. Landry v. State, [495 So.2d 1284 (La.1986)]. This determination of the applicable standard of strict liability precludes the necessity of further discussion concerning Brookshire’s assigned error regarding constructive notice of the pothole and its failure to exercise reasonable care.
This court in Johnson, supra, further noted that the central question was whether the pothole located in the crosswalk of a parking lot constituted an unreasonable risk of harm. Regarding the strict liability standard in this analysis, this court stated:
The strict liability imposed by Article 2317 requires the plaintiff to prove that the vice or defect of the thing is a condition which poses an unreasonable risk of harm to others. A determination of whether a thing presents an unreasonable risk of harm should be made “in light of all relevant moral, economic, and social consideration.” Celestine v. Union Oil Co. of California, 652 So.2d 1299 (La.1995), quoting Entrevia v. Hood, 427 So.2d 1146 (La.1983). The risk-utility balancing test- weighs factors such as gravity and risk of harm, individual and societal rights and obligations, and the social utility involved. Boyle v. Board of Supervisors, LSU, 96-1158 (La.1/14/97), 685 So.2d 1080.
[ 1sThe so-called “heightened scrutiny” of strict liability encompasses the same considerations as La. R.S. 9:2800(B)(1) when determining whether the condition presented an unreasonable risk of harm. This court did not apply a heightened standard in Johnson, supra, but considered factors such as the location of the condition, the size of the condition and the depth of the condition when' determining whether the condition constituted an unreasonable risk of harm. The trial court in the case sub judice considered the same factors when determining whether Plaintiff met his burden of proof.
Accordingly, this assignment of error lacks merit.

Damages

In his fifth'assignment of error, Plaintiff argues that the trial court erred in failing to award him damages. He states that, because of the fall, he suffered severe injuries to his neck, right shoulder, left leg, left knee, right hand, right hip and chest wall and had to undergo approximately six months of medical treatment.. He contends that he should be awarded $20,000 in general damages and $3,144.60 in special damages for his medical bills.
Defendant argues that, should this court reverse the trial court’s ruling on liability, then the damage award should be minimal. *781 It points out Plaintiffs lengthy and relevant medical history, including a workplace injury in 2004 and a motor vehicle accident in 2013, that explains his complaints before and after the incident at issue in this case. It further notes that Dr. Germany’s records and deposition testimony suggest that Plaintiffs injuries were fully resolved in February 2012.
|1fiAs determined by this court, supra, the trial court did not err in finding that Plaintiff failed to meet his burden of proof; and, therefore, Defendant is not liable for damages.
Accordingly, this assignment of error lacks merit.

CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court in favor of Defendant Brookshire Grocery Company, d/b/a Brookshire’s, and against Plaintiff Jerome Waddles. Costs of this appeal are assessed to Plaintiff Jerome Waddles.
AFFIRMED.
CARAWAY, J., concurs.

. Plaintiff stated that he suffered past and future economic damages, including, but not limited to, lost wages, lost economic opportunity, lost earning capacity and/or lost household services. He also alleged that he suffered from past and future physical pain and suffering, mental pain and anguish, physical disability, loss of enjoyment of life, humiliation and embarrassment, physical impairment, inconvenience, risk of traumatically induced arthritis, medical bills, expenses for medicines and orthopedic devices and expenses for physical therapy.